[Civ. No. 31679.   Second Dist., Div. Four.   July 9, 1968.]

VIOLET ULMER, Plaintiff and Appellant, v. CITY OF LOS ANGELES, Defendant and Respondent.

Ernst Lipschutz for Plaintiff and Appellant.

Roger Arnebergh, City Attorney, Bourke Jones and John A. Daly, Assistant City Attorneys, and Nowland C. Hong, Deputy City Attorney, for Defendant and Respondent.

BISHOP, J. pro tem.*—A summary judgment, entered upon defendant's motion, was brought to us by plaintiff's appeal. ██ We find the support required for this "drastic" method of obtaining a judgment quite lacking, and we are reversing the judgment.

It appears that plaintiff and some companions were visiting Griffith Observatory in Los Angeles, on the evening of June 24, 1965, when, about 10 o'clock, they were advised that they should leave, as the place was about to be closed. They heeded the warning and while on their way to the parking lot, lights were suddenly extinguished. The plaintiff kept on her way and fell, with the standard consequences: she "was injured in

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

her health, strength and activity.'' The city takes the position that plaintiff has no cause of action against it: first, because it was under no legal obligation to furnish lights at the location where, and when, plaintiff needed them; and, secondly, because plaintiff was contributorily negligent in continuing on her way when she could not see.

Procedurally, the case had progressed to the point where the plaintiff had a first amended complaint, filed December 15, 1965, to which the defendant city had filed an answer, setting up several affirmative defenses. Then the defendant filed its ''Motion for Summary Judgment'' which actually was a notice warning that a motion for such a judgment would be made ''upon the grounds that Plaintiff has no cause of action against this defendant, there being no duty owed to the Plaintiff by the Defendant, and the Plaintiff is barred from recovery being negligent as a matter of law.'' The ''motion'' went on to announce that ''Said motion will be made and based upon this Notice, all of the pleadings, records and papers on file herein, upon the Deposition of the Plaintiff, filed herewith, and the Declaration of Leon Hall and Exhibit 'A', attached herewith.''

Several questions ask themselves at this point. Just what was the relation of the city to Griffith Observatory and the paths and area that surround it? What lights are there that, when on at night, afford help to visitors between the observatory and the parking lot? Were they turned off, and if so, by whom?

We turn back to the pleadings to see if any of these questions were disposed of there. In the first amended complaint plaintiff alleged in paragraphs VI and VIII, that: ''VI. At all times mentioned herein, the area and sidewalk on the grounds of the Griffith Observatory and the parking lot contiguous thereto was, and is, public property within said city. . . . VIII. At all times mentioned herein, defendant city maintained lights on said property which illuminated the area between the Griffith Observatory building and the parking lot contiguous to the grounds thereof.'' These allegations were denied by the city in its answer. When this issue comes to be decided it will be remembered, of course, that every public building in a city is not the city's responsibility; it may, for example, be a law library, under the jurisdiction of a special board. A light in a public area in a city may or may not be placed and operated by the city.

Now we turn to the ''facts'' made to appear in support of the motion of the city for a summary judgment. The judg-

ment appealed from, we must keep in mind, was not one entered after a trial, but on defendant's motion for a summary judgment.

Leon Hall, in his declaration September 27, 1966, tells us [italics added]:

"That I *am* the Associate Director of the Griffith Park Observatory, Department of Recreation and Parks, City of Los Angeles." He continues by relating that 10 years earlier, at which time his relation to the city is not given, he had "instigated, planned and caused to be installed certain lights for the illumination of a Monument existing in the center of the walkway approaching the Griffith Park Observatory Building." Attached to Hall's declaration as an exhibit is a drawing dated July 14, 1966, which he declares "is a reasonable and fair representation of the roadway of Western Canyon Road where said roadway meets the walkway leading to the Griffith Park Observatory." The exhibit serves the purpose of Mr. Hall, that is, to emphasize that the six lights turned upward on the monument, were casting no light directly on the area below. But the sketch also shows two 11 foot 5-inch light posts, one on the west and one on the east side of the monument, next to a strip of "rock and oil pavement." The exhibit fails to indicate the location of the parking lot. No doubt the sketch would prove useful used before a jury, but on this motion for a summary judgment it raises more questions than it answers, with no more help than Hall's declaration.

Plaintiff's "affidavit," unsigned, consisting of a few more than 50 pages of the usual court reporter's work, contains far more "I didn't notice" and "not that I know of" answers to questions asked her than of answers that are helpful in support of a motion for a summary judgment. It was taken on March 15, 1966, and we have gone through it in search of helpful statements. Her examination is introduced by the words: "Called as a witness on behalf of the Defendant City;" called, no doubt, in the hope that she would say something that would support the city's motion for a summary judgment.

Skipping plaintiff's driver's license number and similar statistics, we learn: She has been to Griffith observatory on two previous occasions, at nighttime. They parked on the parking lot. When they came out of the observatory they noticed some statuary, "like a monument, I think." It was illuminated. "Any other lights on when you came out . . .?"

"I don't remember." . . . "Is there a paved walkway leading from the entrance of the observatory building to the parking lot?" "Yes." As they approached the parking lot, almost to the monument, the lights went out on the monument. "Then what happened?" "And then we kept on walking and I stepped right off into space and went down on my knee. . . ." "At the time that the lights went off at the monument, did you stop or pause? Did you continue walking?" "I don't remember that."

"After the lights went off, did you have any difficulty in seeing ahead?" "Yes. It—just like—well, a dark room when you turn out the lights." "Were there any lights in the parking lot?" "I don't remember." . . . "Do you know what caused you to fall?" "Just dark and I didn't see the curb."

The deposition and declaration, added together, failed to furnish grounds on which to grant the city's motion for a dismissal of plaintiff's complaint and the entry of a summary judgment. Certainly it cannot be said that as a matter of law, plaintiff was contributorily negligent in doing what her companions also did, that is, not sit down and wait for daylight to rescue them, but try to get on to their car, even in the darkened condition. Possibly, on a trial, she will be found to be negligent, but the facts that we have do not foreclose a finding of "negligence not proven."

As to the questions touching on the city's duty and the possibility that it was breached, it cannot be said that no question of fact remained unsettled. As stated in a multitude of cases, we find it said in *Dudum* v. *City of San Mateo* (1959) 167 Cal.App.2d 593, 598 [334 P.2d 968, 971] :

"We are limited to the facts shown by the affidavits (*Kimber* v. *Jones, supra,* 122 Cal.App.2d 914 [265 P.2d 922]), and are to determine only whether the facts so shown give rise to a triable issue (*Coyne* v. *Krempels, supra,* 36 Cal.2d 257 [223 P.2d 244]). The summary judgment procedure is drastic and should be used with caution. (*Eagle Oil & Refining Co.* v. *Prentice,* 19 Cal.2d 553, 556, [122 P.2d 264].) We conclude that, under the rules applicable to summary judgments, the affidavits here do not negate the existence of a triable issue of fact, and that the case must be tried rather than determined on a motion for summary judgment."

We take as ours the last sentence quoted. The judgment is reversed.

Files, P. J., and Jefferson, J., concurred.