[Civ. No. 15626.   Second Dist., Div. Three.   Dec. 18, 1947.]

MABEL E. OWEN, Respondent, v. CITY OF LOS ANGELES, Appellant.

Ray L. Chesebro, City Attorney, Bourke Jones, Assistant City Attorney, and Victor P. Spero, Deputy City Attorney, for Appellant.

Daniel A. Knapp and David G. Kling for Respondent.

SHINN, Acting P. J.—The city of Los Angeles appeals from a judgment after verdict awarding plaintiff damages for injuries sustained when she stepped off the curb into a hole in the pavement. A reversal of the judgment is sought upon several grounds. It is claimed by the city that the condition of the street where plaintiff fell was neither defective nor dangerous; that plaintiff was guilty of contributory negligence, and that the court erred in the matter of instructions.

In the first point, the city says: "The evidence in this case fails to show any condition other than that usually to be found in the ordinary rock and oil surfaced street. This being so, it follows that no liability exists on the part of the city for injuries arising therefrom." It is further said: "An examination of Defendant's Exhibits 'E' and 'F' and

Plaintiff's Exhibit No. 21 illustrates more forcefully than words the nature, extent and location of the condition." These exhibits are photographs of the curb and surrounding area on the east side of Merced Street, where plaintiff fell. They were taken by one Harry Gravatte, an investigator for the Board of Public Works. Gravatte testified that he made several trips to the location but did not take pictures, "because of the fact that the shadows that crossed the curb were such that a good picture could not be obtained showing the location in the street where Mrs. Owen had fallen." His pictures were taken about a month after the accident. They were taken in bright sunlight and at a time when the curb cast a heavy black shadow, a foot or more in width, which completely covered the area in the gutter where the alleged defect in the pavement existed. So well are the depressions and inequalities hidden in shadow, that it requires close examination to detect the true condition, and even then it is not too clear. This much, however, does appear: erosion had occurred along the east curb line extending southerly from the ramp of a driveway, with a width measured from the curb of about 12 inches. The surface, except for the crushed rock, had washed away and much coarse rock was exposed over an area of several feet from the curb. While most of the fragments were small, adjacent to the curb numerous larger sizes appear on the photographs, either loose or lightly embedded, some of them about the size of a small hen's egg. An extreme condition of erosion appears around them. Also evident are some lumps or clusters of rocks which approximate the size of a man's fist. The entire surface of the area adjacent to the curb and for several feet south of the driveway is depressed and distinctly uneven. The hole where plaintiff testified she fell, as described by the witnesses, was in this area, some 28 or 30 inches south of the ramp and close to the curb. Several witnesses testified that it was from 2 to 3⅓ inches deep, about 4 to 6 inches wide, and from 9 to 11 inches in length.

It is the contention of the city that this hole was no more than a trivial defect which it had no duty to repair. We are therefore asked to hold as a matter of law that such a hole, so located, is not a defective or dangerous condition within the meaning of the Public Liability Law (Stats. 1923, p. 675). Counsel for both parties quote from *Nicholson* v. *City of Los Angeles*, 5 Cal.2d 361 [54 P.2d 725], a sidewalk case,

in which "[O]ne block had tilted up so that there was a difference in grade at the break of not more, and possibly less, than an inch and a half." The city cites the case as holding that the described break in the sidewalk was not a dangerous or defective condition, and plaintiff agrees that the case so held. All of the passages quoted in the briefs were addressed to the question of notice. The discussion in the opinion started with the statement: "Assuming that the evidence will support a finding of a dangerous and defective condition by reason of the break and elevation in the concrete surface of the sidewalk, it clearly will not support the finding that 'the defendant had constructive notice of the said condition of said sidewalk for several months prior to January 19, 1934 . . .'" The Nicholson case did hold, however, that the condition was not so obviously dangerous as to charge the city with constructive notice, not only that the condition existed, but that it was a dangerous condition. This construction was given the Nicholson decision in *Whiting* v. *City of National City,* 9 Cal.2d 163 [69 P.2d 990]. In the latter case it was held that as a matter of law a rise of one square in a sidewalk above the adjoining square, extending for several feet, running from nothing at one end to about three-quarters of an inch at the other, located in a much traveled business district of a city, over which many thousands of persons had passed for a period of five years during the existence of the defect, was a condition from which no injury would ordinarily be suffered by persons using the sidewalk with ordinary care, and was not such a defect as would impose liability on a city. (*Rodkey* v. *City of Escondido,* 8 Cal.2d 685 [67 P.2d 1053], also relied upon by the city, involved a saucer-shaped dip at a street intersection constructed for the passage of storm waters.

These cases, and several cited from other jurisdictions, state the familiar rule that minor defects in sidewalks or streets will not necessarily make the city liable for injuries caused thereby, but none of them involved defective conditions and surrounding circumstances which could be described as substantially the same as the one we are considering. We do not doubt that one who stepped into a hole in the pavement, such as the one described, would very likely be upset. It would be especially dangerous for women, wearing the common style of shoe.

It is argued by the city that even if the hole in the pavement

would have presented a danger to pedestrians, it was not to be anticipated that pedestrians would step into it. It is said that it adjoined the curb where it was unlikely that pedestrians would travel and that it would be particularly unreasonable to anticipate that any person would step off the curb into the gutter in order to pet a cat. ▮ It is a question of fact and not of law whether it should be anticipated that pedestrians frequently step on and off curbs into gutters, in the course of entering or leaving their automobiles, crossing the street or using it for other purposes. The question is not whether it was reasonably to be anticipated that a woman would step into the street to pet a cat. The duty of inspection and repair which rested upon the city was not to anticipate the exact thing which plaintiff did at the time of her injury, but the uses which it would reasonably have been anticipated pedestrians would make of the street.

▮ The city would have us hold that the duty to keep streets in a reasonably safe condition for pedestrians is limited to crosswalks and other areas most commonly used, and that pedestrians venture upon other portions of the streets at their peril. But the duty is statutory and it has no such limitation. (*McLaughlin* v. *City of Los Angeles,* 60 Cal.App.2d 241 [140 P.2d 416] ; *Fackrell* v. *City of San Diego,* 26 Cal.2d 196 [157 P.2d 625, 158 A.L.R. 625].) It is the duty of the courts to see that liability under the law is not unjustly imposed, but it is not their duty or prerogative to lift any part of the just burden from the city and place it upon the individuals who use the streets.

▮ The question, on appeal, whether a condition is defective or dangerous is one which calls for the application of the rule that where there is room for difference of opinion among reasonable minds, the question is one of fact. (*Fackrell* v. *City of San Diego, supra,* p. 206.) Under this rule we hold the question to have been one of fact which is concluded by the implied finding of the verdict.

▮ There was evidence from which the jury could have found that the city had actual knowledge of the condition of the street, and also evidence that the eroded condition of the street had existed for several years. Plaintiff testified to this fact and that several years before the date of her accident she had called the city hall on the telephone, had been referred to the city engineer's office and had reported the condition of the street to the man who answered the call, who assured

her that the street would be repaired; also, that two years or more before her accident, she encountered a crew of men with a truck of paving material, repairing an excavation in the street made in replacing a pipe, that she requested them to fill a hole which was gradually becoming larger and that they declined to do so because they had no order for such work. She also testified that some four months before her accident she again called the city hall, asked for the city engineer's office, and complained to a man who answered, of the condition of the street, being again assured that the matter would be taken care of. It was shown by the evidence of the defendant that the city has a street maintenance division, separate and distinct from the city engineer's office, and not under the supervision of the city engineer; that records of complaints are kept in the bureau of maintenance and sanitation, and that a search of the records had failed to disclose a record of a complaint of the condition of Merced Street near plaintiff's home. Plaintiff's testimony, being believed, was sufficient to support an inference that the information imparted to the city through the engineer's office was transmitted to the agency charged with the duty to make the repair. ▮ Proof of the existence for a long period of time of a dangerous or defective condition of a street is sufficient to justify a finding of constructive notice of the condition. (*Fackrell* v. *City of San Diego, supra,* 26 Cal.2d 196, 206, 207.) In view of what we have said as to the duty of the city to make the repair, we could not hold the evidence insufficient to justify a conclusion that in addition to knowledge, the city had constructive notice of the condition.

▮ The city relies heavily upon its pleaded defense of contributory negligence, contending that plaintiff had known for years of the eroded condition of the pavement in the gutter, that such condition was an obvious one, and that plaintiff's fall was due to her own negligence. Plaintiff's accident happened at about 8:25 p. m.; she was walking with her husband; they had crossed the street to the east sidewalk when plaintiff saw a neighbor's cat crouched in the gutter. She stepped from the curb, encountered the hole in question, fell and suffered a compound fracture of her right ankle. She testified that before she stepped down she looked, that it was light enough to see the surface of the street, but that she did not notice the hole. The pavement in the gutter had been washed away along the curb, not only in the particular loca-

tion, but for a considerable distance, including an area in front of plaintiff's home, which adjoined the place of her fall. While plaintiff's knowledge of the general condition of the gutter is admitted, it does not appear that the erosion had created a generally dangerous condition, nor does it appear that plaintiff had knowledge that a hole existed at the point where she stepped from the curb. She testified that she did not know it. Of course, her knowledge of the general condition made it her duty to proceed into the street with more care than would have been demanded if she had been without such knowledge. It was her duty to look and to step down not casually, but carefully, for she had no right, under the circumstances, to believe that the surface of the gutter was even and smooth. No doubt the jury took these facts into consideration. As plaintiff testified that she looked at the pavement before stepping from the curb, and since the jury evidently believed her, it must be deemed a fact that she did, but that she did not notice the hole. An implied finding of the jury was that plaintiff looked carefully. We are asked to overturn this finding because, the city contends, it was established by the evidence that if plaintiff had looked carefully she would have seen the hole. It is not difficult to accept the jury's conclusion on this point. We must assume that in the darkness the hole was not more easily seen than it is in the photographs upon which the city relies. After a careful examination of these exhibits we cannot arrive at a definite conclusion as to the appearance of what we believe to be the hole described by the witnesses. The jury must have experienced the same difficulty.

Whether one who looked, did so carefully, is a question of fact. This has been held most frequently of late in the automobile cases. (See cases collected in 2 Cal.Jur. 10-Yr. Supp. p. 379.) And the rule is the same where the thing which threatens danger is a condition of property. (*Sommerfield* v. *Miratti*, 49 Cal.App.2d 450 [121 P.2d 746], and cases there cited; also, other cased cited *infra*.)

The city argues that plaintiff must have known of the existence of the hole because she was familiar with the general condition of the gutter in the vicinity. Plaintiff testified that she did not know the hole was there, and this also must be accepted as a fact unless, as the city contends, she is chargeable with knowledge of it on the ground that in the exercise of ordinary care she would have learned that it was there. We

cannot agree with this argument. While there was a general condition of erosion, there was no evidence that there was a generally dangerous condition, or that the erosion had left other holes such as the one in question. It was this hole, and not the condition of the gutter generally, that caused plaintiff's accident. The rule applicable here was stated in *Ridge* v. *Boulder Creek etc. School Dist.*, 60 Cal.App.2d 453, 460 [140 P.2d 990], as follows: "Knowledge that danger exists is not knowledge of the amount of the danger necessary to charge a person with negligence in assuming the risk caused by such danger. The doing of an act with appreciation of the *amount* of danger in addition to mere appreciation of the danger is necessary in order to say as a matter of law that a person is negligent.'' █ Plaintiff was not chargeable with knowledge of the danger of the particular condition as a matter of law, merely because she had knowledge of the general condition of the surroundings. It is a question of fact whether her knowledge was such as to charge her with assumption of the risk. (*Parker* v. *Manchester Hotel Co.*, 29 Cal.App.2d 446, 454 [85 P.2d 152]; *Skoglund* v. *Moore Dry-Dock Co.*, 11 Cal. App.2d 287 [53 P.2d 1001]; *De Graf* v. *Anglo California Nat. Bank*, 14 Cal.2d 87 [92 P.2d 899]; *Young* v. *Bates Valve Bag Corp.*, 52 Cal.App.2d 86 [125 P.2d 840]; *Lay* v. *Pacific Perforating Co.*, 62 Cal.App.2d 233 [144 P.2d 395]; *Locke* v. *Red River Lumber Co.*, 65 Cal.App.2d 322 [150 P.2d 506]; *Miller* v. *Pacific Constructors*, 68 Cal.App.2d 529, 540 [157 P.2d 57]; *McStay* v. *Citizens Nat. T. & S. Bank*, 5 Cal.App.2d 595 [43 P.2d 560].)

Furthermore, it is argued on behalf of plaintiffs, and it might have been inferred by the jury, that although plaintiff had knowledge of the poor condition of the pavement, she did not have it in mind. The city, in reply, cites cases from other jurisdictions holding that forgetfulness of the existence of a dangerous condition is not an excuse for negligent conduct. █ The law is otherwise in California. It has been held in numerous cases following the holding in *Meindersee* v. *Meyers*, 188 Cal. 498 [205 P. 1078], that even with full knowledge of the danger which causes the injury, one may be injured and yet be in the exercise of due care. (*Hayward* v. *Downer*, 65 Cal.App. 450 [225 P. 265]; *Matteoni* v. *Pacific Gas & Elec. Co.*, 53 Cal.App.2d 260 [127 P.2d 574]; *Lay* v. *Pacific Perforating Co., supra; Hall* v. *Barber Door Co.*, 218 Cal. 412 [23 P.2d 279].)

At the request of plaintiff, the court instructed the jury in the general law of negligence, defining negligence in the usual terms and stating specifically that if plaintiff proved by a preponderance of the evidence that defendant was negligent, and that such negligence was the proximate cause of her injury, she was entitled to recover unless the defense of contributory negligence was established, as that defense was defined in other instructions. At the request of defendant, the court gave a comprehensive and correct definition of the city's liability under the Public Liability Act of 1923, and following that, an instruction reading: ''The law just read to you is the only authority under which this action can be maintained, if at all, against the defendant, City of Los Angeles, and it follows that before the plaintiff may be entitled to recover in this case from the City of Los Angeles, she must prove to your satisfaction each and all of the following elements by a preponderance of all the evidence: [stating the conditions fully]. . . .''

■ The city contends, correctly, that it was error to give instructions on general negligence. (*Wilkerson* v. *City of El Monte,* 17 Cal.App.2d 615 [62 P.2d 790]; *Pittam* v. *City of Riverside,* 128 Cal.App. 57 [16 P.2d 768].) We are not impressed by plaintiff's argument that the two sets of instructions, when read together, were not conflicting. The criticized instructions, in terms, broadened the liability of the city from one arising out of the toleration of physical conditions of city property, to one encompassing other negligent omissions and also negligent acts of the city's agents. It was for this reason that it was held error to give similar instructions in the Wilkerson case, where the question of prejudice was not decided. And it was for the reason that the verdict against the city in the Pittam case may have been based upon evidence which failed to establish a case under the Public Liability Law that the judgment was reversed. But we are satisfied that the error here was not prejudicial. A single breach of duty was charged; it was simple, and clearly defined—was the street in a dangerous condition because of the hole, and had the city received notice or knowledge of it and failed to repair it within a reasonable time thereafter? There can be no reason to doubt that the jury answered the first question in the affirmative. The element of notice and a reasonable opportunity to correct a dangerous condition of property is absent from the instructions on general negligence and in a close case the giving of a

formula instruction omitting that element might be seriously prejudicial. But here there was evidence of actual notice as well as evidence of the existence of a condition of disrepair for a period of several years. The chance that the jury did not determine that the city had notice or knowledge long before plaintiff's accident is so slight as to be only a remote possibility. Prejudice to the city could have resulted only if the verdict had been returned against it without implied findings establishing a factual basis for its statutory liability. We repeat that we are satisfied this did not occur. We find no error in the refusal of two instructions requested by appellant.

The judgment is affirmed.

Wood, J., and Vallée, J. pro tem., concurred.

A petition for a rehearing was denied January 16, 1948, and appellant's petition for a hearing by the Supreme Court was denied February 11, 1948.