[Civ. No. 24266. First Dist., Div. One. Aug. 26, 1968.]

LENORA HILTS et al., Plaintiffs and Respondents, v. COUNTY OF SOLANO et al., Defendants and Appellants.

McGregor, Bullen & McKone, James G. Van Noy, Jr., Rust & Hoffman, Douglas Newlan, Ellis J. Horvitz and David A. Tallant for Defendants and Appellants.

Edwin L. Z'Berg for Plaintiffs and Respondents.

MOLINARI, P. J.—This is a wrongful death action brought by the widow and two adult sons of Julius Benson Hilts, who was fatally injured when the vehicle that he was driving collided with a truck driven by defendant Vernon L. Wallis and owned by defendant Valley Livestock Co. (hereinafter referred to as "Valley"). Plaintiffs alleged negligence of Wallis and Valley and also alleged against the County of Solano (hereinafter referred to as "County") that the intersection in which the accident occurred was in a dangerous condition. The jury rendered its verdict in favor of Wallis and Valley but against County in the sum of $37,500. The court denied County's motions for a new trial and for judgment notwithstanding the verdict, and County appeals from the judgment against it and from the order denying the motion for judgment notwithstanding the verdict. The court granted plaintiffs' motion for a new trial as against Valley, and both Valley and Wallis appeal from that order. The order does not, however, mention Wallis, and there is therefore a question whether he may appeal from it.

County alleges numerous errors in the admission of evidence and the instructions, as well as claiming that as a matter of law it is immune from liability in this case under certain sections of the Government Code.[1] Valley and Wallis contend that the overwhelming preponderance of credible evidence supports the verdict in their favor and hence the court abused its discretion in granting plaintiffs' motion for a new trial. Additionally, they argue that the order granting a new trial is insufficient under the doctrine of *Mercer* v. *Perez*, 68 Cal.2d 104 [65 Cal.Rptr. 315, 436 P.2d 315], and also that the final judgment in favor of Wallis precludes a new trial as to Valley. After stating the facts, we shall discuss the appeals of the defendants separately.

## Facts

The collision, which was stipulated to have been the proximate cause of decedent's death, occurred on June 16, 1964, in

---

[1]Unless otherwise indicated, all statutory references are to the Government Code.

the intersection of Midway and Bulkley Roads in Solano County, between a three-axle cattle truck and trailer rig driven by Wallis and owned by Valley and a panel truck driven by decedent. The cattle truck had been proceeding east on Midway and the panel truck had been moving north on Bulkley. Decedent was dead when California Highway Patrol Officer Blasingame arrived at the scene of the accident.

On the date of the accident the intersection of Midway and Bulkley formed a curve to the north and west; Bulkley jogged to the west so that its northern extension beyond the intersection was to the west of the southerly portion of the street. Midway was 20 feet wide west of the intersection and 16 feet wide east of it, while Bulkley was 20 feet wide south of the intersection, widened to 24 feet around the curve in the intersection, and then narrowed to 18 feet north of the intersection. There were broken white lines down the middle of Bulkley on both sides of the intersection and on Midway there were no markings east of the intersection and broken white lines west of the intersection, these lines becoming solid yellow lines near the intersection. The only control device in the intersection was a stop sign north of the intersection controlling southbound traffic on Bulkley. There were intersection warning signs west of the intersection on Midway and on both sides of the intersection on Bulkley. However, these signs did not depict the peculiar shape of the intersection. Further, there was a black and white directional sign on Bulkley 500 feet south of the intersection, this sign indicating that Sacramento was 22 miles straight ahead, Dixon was 7 miles to the left, and Yolano was one mile to the right. Next to this directional sign was a curve sign. The bulk of the traffic in the vicinity of the intersection traveled on Midway eastbound to Bulkley and then south on Bulkley; relatively few vehicles went straight through the intersection on Midway.

There were English walnut trees growing along the south edge of Midway and the east edge of Bulkley in and near the intersection. The testimony of witnesses differed somewhat as to the extent to which these trees affected visibility. Wallis testified that the trees interfered with his vision but that he could see traffic with difficulty at some point within 200 feet of the intersection. Ferguson, Assistant Deputy Director of Operations in the Department of Public Works for Solano County, testified that the trees permitted visibility of oncoming traffic for about 400 feet on either side of the intersection because the foliage of the trees starts about twelve to fourteen

feet off the ground. He also testified that he had inspected and trimmed the trees at this intersection on January 31, 1964. Faustman, a consulting traffic engineer, testified that differences in elevation between the roadway grades and adjoining fields plus the presence of the trees caused some visibility obstruction around the intersection.

The speed limit for trucks on Midway (applicable to the vehicle driven by Wallis) was 50 miles per hour. The limit for passenger vehicles on Bulkley (applicable to the panel truck driven by decedent) was 65 miles per hour.

Wallis testified that he had been through the intersection many times and knew that the bulk of traffic went south around the curve; that he did not see decedent's vehicle until it was coming into the intersection; and that the cab of his truck was in the intersection when he saw decedent's panel truck.

Officer Blasingame testified that the cattle truck's tachometer chart showed that it had been going a steady 52 miles per hour prior to the accident and that the needle suddenly dropped off 20 to 25 miles per hour, which Blasingame determined to be the point at which the truck had turned over. There were skid marks left by the truck beginning 33 feet west of the east edge of the intersection, or 15 feet west of the west edge of Bulkley. Blasingame thought that these marks were made by the driver wheels on the cab, which wheels are 20 feet behind the front of the truck. Also, Blasingame stated that there was a substantial distance of feet before the skids would become apparent and further that the reaction distance at 52 miles per hour is about 58 feet. The front of the truck, Blasingame concluded, was in the intersection when the skids began. Assuming that decedent's vehicle was proceeding at a speed of 50 to 55 miles per hour, Blasingame concluded from the location of the point of impact that the cattle truck must have entered the intersection first.[2]

Wallis contradicted Blasingame's testimony that the skid marks were left by the driver wheels and testified that when he applied his brakes the rear wheels, which are located 45 feet behind the front ones, grabbed first.

Higby, a deaf mute who, at the scene of the accident, was driving about 500 yards behind Wallis, testified that he saw decedent's vehicle on Bulkley for a few minutes and that it was traveling about 50 to 55 miles per hour. He could not,

[2]As will be seen, however, there was no testimony as to the speed of defendant's vehicle when it entered the intersection.

however, see the vehicle for the last one and one-half blocks south of the intersection. He testified that both vehicles entered the intersection at the same time.

There was no testimony as to the manner in which decedent had been driving prior to the accident except for the testimony of Higby that he had been driving 50 to 55 miles per hour a block and a half south of the intersection (i.e., within the speed limit applicable to him). Mrs. Hilts testified that decedent was very familiar with the intersection.

Gordon Webster, who lived one and one-half blocks from the site of the accident, testified that he knew of at least a dozen accidents that had occurred in that intersection although he had not actually witnessed any of these accidents; that he had complained to Ferguson three or four times over a one-year period prior to the accident involved in the instant case; that he told Ferguson to put in a stop sign; that although the stop sign controlling southbound traffic was put in, it did not help; and that he told someone to put the sign on the south side of the intersection (controlling northbound traffic) instead. Ferguson testified that he recalled Webster complaining to him about the intersection at least twice but did not remember what they talked about with reference to stop signs, and further testified that he has no jurisdiction over signs. In 1965 (after the accident) Ferguson recommended that a stop sign be put in the intersection because of a barley crop obstructing visibility, and a stop sign was in fact put in for northbound traffic on Bulkley.

Faustman testified that the intersection as it existed in 1964 was potentially a hazardous intersection and constituted a trap for the motorist. He stated that visibility was obstructed due in part to differences in elevation between roadway grades and adjoining fields, and in part to the presence of the walnut trees; that the intersection should have been physically redesigned; and that some advance warning signs should have been erected. He estimated that it would cost less than $1,000 to straighten out one of the intersecting streets. Faustman also illustrated various ways of striping the intersection to make it safer with respect to the way that traffic meets at the curve. Finally, he testified that from the standpoint of maintenance, operation and repair, counties should inspect primary roads such as Midway and Bulkley from time to time as a matter of traffic safety.

### Appeal of the County of Solano

*Was it Error to Admit Evidence of Prior Accidents Occurring at the Intersection Without Showing Similarity to the Instant Accident?*

 *No.* Over the objection of County, the court permitted Webster to testify, as noted, that there had been several accidents at the intersection of Midway and Bulkley. On cross-examination by County the witness admitted that he had not actually seen any of the accidents occur and was not sure when they happened or how many there were, and further stated that in some of them intoxication of the drivers might have played a part. County contends that the admission of this evidence constituted reversible error, relying on *Wilkerson* v. *City of El Monte,* 17 Cal.App.2d 615, 620-621 [62 P.2d 790], wherein the court stated that evidence of prior accidents is inadmissible to show the dangerous condition of an intersection unless there is evidence as to the cause of said prior accidents, and *Martindale* v. *City of Mountain View,* 208 Cal. App.2d 109, 116 [25 Cal.Rptr. 148], in which the court stated that evidence of prior accidents is admissible to prove the existence of a dangerous condition provided that these accidents occurred under circumstances substantially similar to those of the accident for which recovery is sought. (See also *Kopfinger* v. *Grand Central Public Market,* 60 Cal.2d 852, 860-861 [37 Cal.Rptr. 65, 389 P.2d 529].)

We note, initially, that County is barred from raising the point on appeal because it has waived its right to complain that the receipt of this testimony was error. When counsel for plaintiffs first attempted to question Webster about the prior accidents, counsel for County objected and demanded an offer of proof, whereupon the proceedings were adjourned to chambers. At that time counsel for County argued that before any evidence of prior accidents can go before the jury there must be a prior showing that the accidents occurred under similar circumstances. Counsel for plaintiffs then argued that there were at least twelve accidents involved, the implication being that it would be burdensome to require a prior showing as to each accident, and the trial court then overruled County's objection but stated that ''if you want to go into this on cross-examination on the other accidents having nothing to do with it, you may.'' As stated, counsel for County did go into the matter on cross-examination and established that there was no evidence of similarity between the prior accidents and the

instant collision; however, having established this, counsel for County did not move to strike the prior testimony of Webster. Accordingly, the objection was waived.

██ Assuming, moreover, that the testimony was properly objected to, the trial court did not err in admitting it. The requirement of similarity of conditions is "much relaxed" when the evidence is offered to show *notice* of the dangerous condition. (*Laird* v. *T. W. Mather, Inc.*, 51 Cal.2d 210, 220 [331 P.2d 617].) In order to establish the liability of County for a dangerous and defective condition of public property it was incumbent upon plaintiffs to show that County had actual or constructive notice of the alleged dangerous condition of the intersection. (§ 835, subd. (b).) The test of admissibility of evidence of prior accidents to show notice is that the evidence must be such as to have attracted the defendant's attention to the dangerous situation. (*Laird* v. *T. W. Mather, Inc., supra,* at p. 220.) The question of admissibility of this sort of evidence, furthermore, rests within the discretion of the court. (*Martindale* v. *City of Mountain View, supra,* 208 Cal.App.2d 109, 116; *Kopfinger* v. *Grand Central Public Market, supra,* 60 Cal.2d 852, 860; *Dragash* v. *Western Pac. R.R. Co.,* 161 Cal.App.2d 233, 242 [326 P.2d 649].)

County claims that plaintiffs offered the testimony of Webster only to show County's negligence rather than to show notice. In support of this argument County points out that counsel for plaintiffs said "My offer of proof, Your Honor, goes to the negligence of the county." Counsel went on, however, to make clear that he was offering the testimony to show notice as well. He stated that he expected to prove that Webster had complained to County about the accident many times. Under the circumstances, since the evidence was admissible to show that County's attention had been attracted to the potentially dangerous character of the intersection, and no request was made by County that the jury be instructed that the evidence was received for the limited purpose of showing notice,[3] we cannot hold that the court abused its discretion.

*Did the Instructions Erroneously Permit County to be Held Liable on the Basis of Common Law Negligence?*

*No.* In this case the court gave instructions both on negligence and on the statutory liability of a public entity under

[3]In *Laird* v. *T. W. Mather, Inc., supra,* 51 Cal.2d 210, 220, an instruction was given that the evidence was received for the limited purpose of showing notice.

the Government Code for a dangerous condition of public property. Although County does not question the correctness of the instructions given (except on limited grounds discussed *infra*), it states that the court erred in not instructing the jury specifically that the negligence instructions applied only to Valley and Wallis and that County could be held liable only under the theory of the Tort Claims Act. County points out that the error was compounded because the court gave a concurrent negligence instruction as to the liabilities of joint tortfeasors without giving an instruction that County is not liable for negligence, and that the court further emphasized its error by stating that the issues were ''Were the defendants *or either of them* negligent?'' (Italics added.) County relies on those cases that hold it error to give an instruction on negligence in a case under the (former) Public Liability Act. (*Pittam* v. *City of Riverside,* 128 Cal.App. 57, 67-68 [16 P.2d 768]; *Wilkerson* v. *City of El Monte, supra,* 17 Cal.App.2d 615, 624; *Owen* v. *City of Los Angeles,* 82 Cal.App.2d 933, 942 [187 P.2d 860]; *Behr* v. *County of Santa Cruz,* 172 Cal. App.2d 697, 712 [342 P.2d 987].)

Plaintiffs respond that the court did in essence inform the jury that the negligence instructions applied only to Valley and Wallis and that the Government Code instructions applied to County. Plaintiffs point to portions of the charge wherein the court told the jury (1) that it would instruct, first on negligence, then on ''the special laws relating to the liability of a public entity''; (2) that the plaintiffs had the burden of proving, one, that the defendants Wallis and Valley were negligent, and two, that the conditions at the intersection of Midway and Bulkley Roads were dangerous; and (3) that ''The instructions given govern the case as to each defendant insofar as they are applicable to him, to the same effect as if he were the only defendant in the action, and regardless of whether reference is made to defendant or defendants in the singular or plural form.'' We agree with County, however, that the court nowhere gave the jury guidelines for determining which instructions applied to which defendant, and nowhere made plain that the liability of County could only be statutory and could not rest on a theory of common law negligence. (§ 815 and comment thereto.)

The cases cited by County are not directly in point since in those cases there were no codefendants and it was therefore error to give any instructions on common law negligence, whereas here the presence in the case of the codefendants

Valley and Wallis made it necessary to give instructions on negligence. ■ The cases do make plain, however, that a verdict against a county must be overturned if it is erroneously based on a negligence theory. Thus, it would appear that County's argument in this case reduces itself to the proposition that the court should have given an instruction stating the substance of section 815, to wit, that a public entity is not liable for an injury except as provided by statute. We agree that such an instruction would have been proper in this case and would have insured that the jury did not become confused by the injection into the case of the issue of negligence on the part of Valley and Wallis.

■ County did not, however, request such an instruction. Although erroneous instructions may always be challenged on appeal (Code Civ. Proc., § 647; *Beck* v. *Kessler*, 235 Cal.App. 2d 331, 334 [45 Cal.Rptr. 237]; *Rivera* v. *Parma*, 54 Cal.2d 313, 316 [5 Cal.Rptr. 665, 353 P.2d 273]), a party may not argue on appeal that the court failed to give a specific instruction when that party did not request such instruction (*Barrera* v. *De La Torre*, 48 Cal.2d 166, 170 [308 P.2d 724]; see also *Mula* v. *Meyer*, 132 Cal.App.2d 279, 286 [282 P.2d 107]; *Gaspar* v. *Georgia Pac. Corp.*, 248 Cal.App.2d 248, 251 [56 Cal.Rptr. 243].) Accordingly, we think County is precluded from arguing on this appeal that the court should have instructed in the terms of section 815.

■ In any case, we doubt that the omission of the desired instruction was prejudicial in this case. We pointed out in *Behr* v. *County of Santa Cruz, supra,* 172 Cal.App.2d 697, 712, that the reason that it is improper to instruct on negligence as such in a Public Liability Act case is that the jury might be led into predicating liability on an agent's negligence, without more. (Accord: *Owen* v. *City of Los Angeles, supra,* 82 Cal.App.2d 933, 942, where the court also states that prejudice might flow in some cases from a broadening of the entity's liability beyond the bounds of the statute.) Here there is no evidence that any agent or employee of County was responsible for the accident, and therefore, in view of the fact that the jury was fully instructed on the statutory basis of County's liability under section 835, we do not think that the jury was misled into predicating County's liability on some other theory. There simply is no evidence in the record of "common law negligence" of County on which the jury might erroneously have based its verdict. (See *Owen* v. *City of Los Angeles, supra.*) Accordingly, we conclude that the

failure to give the instruction desired by County did not result in a miscarriage of justice.

■ County also argues that it was error to instruct that liability might be based on the negligent or wrongful act or omission of an employee of the public entity that created the dangerous condition, when there was no evidence to show such possibility. The objected-to instruction is essentially section 835, subdivision (a), and although it correctly states the law, it would be error to give it if it were not relevant to the issues raised by the evidence. (*Smith* v. *Shankman*, 208 Cal.App.2d 177, 186 [25 Cal.Rptr. 195]; *Untalan* v. *Glass*, 190 Cal.App.2d 474, 477 [12 Cal.Rptr. 1].) Here, however, the evidence is susceptible of the inference that County's employees negligently created the dangerous condition when they graded the roadways, or planted the trees, or striped the streets, or set up the intersection warning signs that did not accurately depict the nature of the intersection. Accordingly, it was not error to give the instruction based on section 835, subdivision (a). In this respect we point out that our conclusion, that there was evidence from which it might be inferred that the negligence of a county employee created the dangerous condition does not detract from our prior statement that there is no evidence of "common law negligence" on the part of County or its employees, since the latter statement means only that there is no indication that the county employees had anything to do with the happening of the collision itself. In this case, the only relevant negligent acts of employees of County would be acts directed to the creation of the dangerous intersection; and there is no evidence of any other sort of negligence.

*Was it Reversible Error to Give Uncertain and Confusing Instructions on Sections of the Vehicle Code?*

■ *No.* County argues that the court's instructions on the basic speed law and on prima facie speed limits are confusing and misleading and that it was reversible error to give these instructions. Although we agree that the instructions given were erroneous,[4] they do not require a reversal of the judgment against County because the judgment rests purely on

---

[4]It was incorrect to state that conduct in violation of the basic speed law is merely presumptive evidence of negligence that may be rebutted by evidence showing that the conduct was excusable, justifiable and prudent. (See *Bush* v. *Southern Pac. Co.*, 106 Cal.App. 101, 108; *Bennett* v. *Robertson*, 65 Cal.App.2d 278, 280-281 [150 P.2d 547].) The instruction on the prima facie speed law is grammatically unsound and confusing. It does not state what the effect of the prima facie speed limit is and does not make clear that the 15 miles per hour limit applies to drivers entering an intersection to which the limit is applicable.

County's statutory liability for a dangerous condition of public property and does not involve any questions of the negligence of Wallis. As to decedent, there was no evidence to rebut the presumption that he was exercising due care at the time of the accident. (Former Code Civ. Proc., § 1963, subd. (4), applicable to the instant trial; *Tannyhill* v. *Pacific Motor Transport Co.*, 227 Cal.App.2d 512, 517 [38 Cal.Rptr. 774].) The jury may well have been confused as to whether Wallis was or was not negligent in view of the confusing and erroneous instructions with respect to speed, but we do not see how this confusion could have prejudiced County's case, inasmuch as even if Wallis was negligent and his negligence contributed to the accident, County would nevertheless be liable under section 835 if the dangerous condition of the intersection occurred in producing the injury or contributed to it. (*Gardner* v. *City of San Jose*, 248 Cal.App.2d 798, 805-806 [57 Cal.Rptr. 176].) The jury was properly instructed under section 835 that the dangerous condition had to be a cause of the accident in order for plaintiffs to recover against County.

### Was it Error to Deny County's Motion for a New Trial?

█ *No.* The denial of a motion for new trial rests in the discretion of the trial court. (See *Page* v. *Principe*, 220 Cal. App.2d 151, 157 [33 Cal.Rptr. 836]; *Holland* v. *Kerr*, 116 Cal.App.2d 31, 38 [253 P.2d 88].) We have already determined, *supra*, that such errors in the instructions as did occur were not prejudicial to County.

### Was it Error to Deny County's Motion for a Judgment Notwithstanding the Verdict?

█ *No.* County contends that the court should have granted a judgment notwithstanding the verdict in County's favor because the evidence shows as a matter of law that it could not be liable in this action, first, because the uncontradicted evidence shows that both Wallis and decedent were familiar with the intersection and hence there could be no duty to warn them of its nature, and second, because the evidence in this case shows that it could not be liable on any basis other than the failure to provide regulatory or warning signs or, alternatively, on the basis of the design of the intersection, which design, according to County, was formerly approved, and that a public entity is immune from liability for failure to provide regulatory traffic control signals or signs (§ 830.4), for failure to provide warning signals or signs

(§ 830.8), and for an injury caused by the design of public property when such design was formerly approved. (§ 830.6.)

The testimony of Faustman, the traffic engineer, indicates that the instant intersection was dangerous not only because of the failure to provide warning or regulatory signs or signals but also because of the conjunction of other factors such as the presence of trees, the differences in elevation between the roadway grades and adjoining fields, and the method of striping the intersection. Accordingly, we cannot say as a matter of law that the immunities of sections 830.4 and 830.8 governed this case. Section 830.4 states that a condition is not a dangerous condition *merely* because of the failure to provide regulatory traffic control signals, stop signs, yield right-of-way signs, speed restitution signs, or distinctive roadway markings. Section 830.8 prevents the imposition of liability *solely* on the basis of the failure to provide traffic regulatory or warning signals or devices of a type not listed in section 830.4. Section 830.8 does, however, impose liability for failure to provide such a signal or device where the condition constitutes a trap to a person using the street or highway with due care. (See Law Rev. Commission Comment to § 830.8; *Dahlquist* v. *State of California,* 243 Cal.App.2d 208, 213-214 [52 Cal.Rptr. 324].) Further, where the public entity undertakes to install signs and such signs themselves create a dangerous condition, liability may be predicated on this basis. (*Teall* v. *City of Cudahy,* 60 Cal.2d 431, 434 [34 Cal.Rptr. 869, 386 P.2d 493].) Here, the state of the evidence was such that the trier of fact could conclude that the subject intersection was a trap to a person using the street or highway with due care. Accordingly, it was also a question of fact whether County failed to provide the *warning* devices or signals necessary to warn of the dangerous condition.[5] Here the warning signs that were installed were such as to warrant the inference that they did not accurately depict the intersection and might themselves have been partly responsible for the dangerous potential of the intersection. We, therefore, conclude that it does not appear that as a matter of law County was immune from liability under sections 830.4 or 830.8.

As to the approved plan or design immunity of section

---

[5] Section 830.8 provides that a public entity is not exonerated if a sign or device ''was necessary to warn of a dangerous condition which endangered the safe movement of traffic and which would not be reasonably apparent to, and would not have been anticipated by, a person exercising due care.''

830.6, County here relies on *Becker* v. *Johnston,* 67 Cal.2d 163, 172-173 [60 Cal.Rptr. 485, 430 P.2d 43], involving an allegedly dangerous "Y" intersection, wherein it was held that if the intersection had been formerly approved by the legislative body of the public entity and there was at the time of said approval substantial evidence on the basis of which a reasonable public employee could have adopted or approved the plan or design, then the immunity of section 830.6 applied to shield the public body from liability.

The immunity of section 830.6 is an affirmative defense which must be pleaded and proved. (See *Teall* v. *City of Cudahy, supra,* 60 Cal.2d 431, 435; *Dahlquist* v. *State of California, supra,* 243 Cal.App.2d 208, 214.) In the present case County did not plead such an affirmative defense, it was not delineated as an issue in the pretrial conference order, nor was this a theory of defense at the trial. Moreover, no instructions on this aspect of governmental immunity were proffered by County or given by the court. The only evidence adduced which touched on this subject consists of documents showing that County acquired the right-of-way for the intersection in 1865, and that in 1867 the right-of-way was curved because of the location of a house and barn. The evidence does not show that the County Board of Supervisors approved the intersection as it existed at the time of the accident in this case. In sum, the burden was on County to plead and, then by proof, to make a prima facie showing that the intersection formerly approved was the same as that now found to constitute a dangerous condition of public property.[6]

The mere fact that both Wallis and decedent were familiar with the intersection would not entitle County to a judgment notwithstanding the verdict or a directed verdict. We think that the evidence presented a question of fact for the jury as to whether even persons familiar with the intersection might be unaware of its hidden potential for danger. Thus, it is reasonable to suppose that even though decedent may have driven through the intersection many times, he never observed a vehicle proceeding through on Midway, since the bulk of the traffic turned south onto Bulkley, and hence it never occurred to him that such a vehicle might be difficult to see through the trees and might pose an especially dangerous problem.

---

[6]County has asked this court to take judicial notice of certain documents which it asserts supply sufficient evidence establishing the immunity conferred in section 830.6. These consist of certain records of the County

 Since there is evidence from which the jury might have determined that the intersection was dangerous to persons using due care and that said dangerous condition was a cause of the instant accident, the motion for judgment notwithstanding the verdict was properly denied. (See, e.g., *Tremeroli* v. *Austin Trailer Equip. Co.*, 102 Cal.App.2d 464, 477 [227 P.2d 923].)

### Appeal of Valley and Wallis

*Is There a Final Judgment in Favor of Wallis that Precludes Granting a New Trial as to Valley?*

 *Yes.* The rule has been established that where the liability of an employer in tort rests solely on the doctrine of *respondeat superior,* a judgment on the merits in favor of the employee is a bar to an action against the employer (*Freeman* v. *Churchill,* 30 Cal.2d 453, 461 [183 P.2d 4]), and therefore where the judgment goes in favor of both the employer and the employee, the trial court may not grant a new trial solely as to the employer. (*Cox* v. *Certified Grocers of Cal. Ltd.,* 224 Cal.App.2d 26, 31 [36 Cal.Rptr. 48]; see also *Spruce* v. *Wellman,* 98 Cal.App.2d 158, 162 [219 P.2d 472].) Here, the negligence of Valley must, under the doctrine of *respondeat superior,* be predicated upon the negligent acts of Wallis. Accordingly, if there is a final judgment in favor of Wallis, it precludes the granting of a new trial as to Valley.

---

Clerk, the Director of Public Works and the County Assessor. These documents were not introduced in evidence in the trial court nor was the trial court requested to judicially notice them. As already pointed out, the issue of this specific immunity was not before the court below. Therefore, even if we could take judicial notice of these documents they would not be relevant to any issue that was before the trial court. Moreover, they are not the subject of judicial notice. The instant case was tried before the adoption of the new Evidence Code which expands the types of matters which may be judicially noticed and which delineate the judicial notice which may be taken by the reviewing court. (Evid. Code, §§ 451 to 459, inclusive.) Accordingly, even though the subject documents might be judicially noticed under the Evidence Code, they were not matters which were the subject of judicial notice when this case was tried. Code of Civil Procedure section 1875, subdivision 3, which was then in force, provided, in pertinent part, that courts took judicial notice of "Public and private official acts of the legislative, executive and judicial departments of this State . . . ." This provision has been interpreted to mean that judicial notice could not be taken of the contents of city and county ordinances and rules or resolutions of local boards. (See *South Shore Land Co.* v. *Petersen,* 226 Cal.App.2d 725, 746 [38 Cal.Rptr. 392]; *Thompson* v. *Guyer-Hays,* 207 Cal.App.2d 366, 374 [24 Cal.Rptr. 461]; *County of Los Angeles* v. *Bartlett,* 203 Cal.App.2d 523, 529 [21 Cal.Rptr. 776]; *Fickeisen* v. *Civil Service Com.,* 98 Cal. App.2d 419, 423 [220 P.2d 605]; *City of Oakland* v. *Brock,* 8 Cal.2d 639, 641 [67 P.2d 344].)

After judgment was entered in favor of Wallis and Valley, plaintiffs moved for a new trial against both Valley and Wallis. The order granting a new trial, however, names only Valley. In *Cox, supra,* there was no valid notice of motion for a new trial filed as to the employee. It was there held that the trial court had no jurisdiction to grant a new trial as to the employer alone. Here, although there was a valid notice of motion filed against the employee, Wallis, a new trial was granted only as to Valley. Upon the rationale of *Cox,* that since a new trial could not be granted as to the employee it was finally and conclusively determined that he was not liable to the plaintiff and therefore his employer could not be liable under *respondeat superior,* we hold that the judgment against Wallis has become final because a new trial was not granted as to him. Accordingly, under the rule of *Freeman, supra,* said judgment bars a further action against Valley.

*Is the Order Granting a New Trial Legally Sufficient?*

■ *No.* The order granting a new trial must be reversed for the additional reason that it is legally insufficient. It does not specify unambiguously the ground on which it is based. (See Code Civ. Proc., § 657; *Mercer* v. *Perez,* 68 Cal.2d 104, 109-111 [65 Cal.Rptr. 315, 436 P.2d 315].) In the memorandum attached to the order granting the motion for new trial the trial court states essentially that a new trial was granted because the evidence shows that Wallis was negligent and decedent was not negligent. Assuming that we were disposed to hold that said language pinpoints the ground of the new trial as being insufficiency of the evidence, the order would still fail in its statement of reasons in that it does not attempt or purport to recite the respects in which the evidence is legally inadequate, as is required by Code of Civil Procedure section 657. (*Mercer* v. *Perez, supra,* at p. 116.) Accordingly, the order cannot be sustained on the ground of insufficiency of the evidence. We must, however, search the record to see if the order may be sustained on any other ground specified in plaintiffs' motion for a new trial. (*Mercer* v. *Perez, supra,* at p. 119; *Tagney* v. *Hoy,* 260 Cal.App.2d 372, 374-375 [67 Cal.Rptr. 261].)

The motion for a new trial is based on three grounds: insufficiency of the evidence, the verdict is against the law, and errors in law occurring at trial and excepted to by plaintiffs.

■ A verdict is against the law when there is a failure to find on a material issue, or the findings are irreconcilable,

or the evidence is insufficient in law so that a directed verdict would have been proper for plaintiffs. (*Tagney* v. *Hoy, supra,* 260 Cal.App.2d 372, 376.) Here none of these grounds are applicable except the directed verdict test. In this case plaintiffs were not entitled to a directed verdict, since the evidence conflicts as to whether Wallis or decedent entered the intersection first and as to whether Wallis was negligent in view of his speed and the limited visibility conditions at the intersection. Although it is true that Wallis was exceeding the prima facie speed limit, this fact, as already pointed out, does not establish that he was negligent as a matter of law. The order thus may not be sustained on the ground that the verdict is against the law.

As to errors of law, we have indicated certain errors in the instructions but find no indication that plaintiffs excepted to said errors. On the contrary, in contesting County's appeal plaintiffs argue that the instructions were proper. Accordingly, the order granting a new trial cannot be sustained on this ground either.

### *Is Wallis a Party to the Instant Appeal?*

*Yes.* Valley and Wallis argue that Wallis is a party to the instant appeal even though not named in the order granting a new trial because according to *Cox, supra,* Wallis as the employee is interested in any judgment that may be recovered against his employer because the employer may recoup his losses against the employee for damages for negligence occurring within the scope of employment. (*Cox* v. *Certified Grocers of Cal. Ltd., supra,* 224 Cal.App.2d 26, 31.) We agree that *Cox* establishes that Wallis is sufficiently aggrieved by the order granting a new trial as to Valley to appeal from it under the basic rule that a party is aggrieved if he has an interest in the subject matter of the judgment. (See *Estate of Colton,* 164 Cal. 1, 5 [127 P. 643].)

The question remains, however, whether Wallis is a party to the action, in view of the provisions in Code of Civil Procedure section 938 that any *party* aggrieved by a judgment may appeal therefrom. What cases exist on this subject simply state that one must be a party to the action or a party to the record in order to appeal. (*People* v. *Arthur Murray, Inc.,* 238 Cal.App.2d 333, 338 [47 Cal.Rptr. 700] ; *Estate of Armstrong,* 241 Cal.App.2d 1, 6 [50 Cal.Rptr. 339].) We think that since Wallis was a party to the original action, the mere fact that he was not named in the order granting a new trial does not

preclude his appealing therefrom inasmuch, as stated, he is definitely aggrieved thereby.

### Conclusion

In view of the foregoing we conclude that the judgment in favor of plaintiffs and against County should be affirmed, and that the order granting the new trial as to Valley must be reversed.

The order denying the motion of defendant County of Solano for a judgment notwithstanding the verdict is affirmed. The judgment against defendant County of Solano is affirmed. The order granting a new trial as to defendant Valley Livestock Co. is reversed. Plaintiffs shall recover their costs on appeal from defendant County of Solano. Defendants Vernon L. Wallis and Valley Livestock Co. shall recover their costs on appeal from plaintiffs.

Sims, J., and Elkington, J., concurred.

The petition of the appellant County for a hearing by the Supreme Court was denied October 23, 1968.