[Civ. No. 32205. First Dist., Div. Two. Mar. 20, 1974.]

GEORGE NEWSON, Plaintiff and Appellant, v.
CITY OF OAKLAND, Defendant and Respondent.

**COUNSEL**

Warwick, Stahl & Warwick, Warwick, Devane & Warwick and Benjamin Warwick for Plaintiff and Appellant.

Edward A. Goggin, City Attorney, and William C. Sharp, Deputy City Attorney, for Defendant and Respondent.

**OPINION**

**TAYLOR, P. J.**—Plaintiff, George Newson, appeals from an adverse judgment entered on a jury verdict in his action for damages for personal injuries sustained when his motorcycle hit a newly constructed concrete "traffic island" in the center of East 14th Street in defendant City. Newson contends that: 1) the evidence did not support the verdict as to his contributory negligence; 2) the court erred in failing to instruct on the doctrines of momentary forgetfulness and strict liability; and 3) he was prejudiced by the enforced disclosure of his failure to file federal and state income tax returns. We have concluded that there is no merit in any of these contentions and the judgment in favor of the City must be affirmed.

Viewing the record most strongly in favor of the verdict and judgment, as we must, the following facts appear: On May 25, 1970, the City had commenced a 12-day project of installing three concrete "traffic islands" at the intersection of 66th Avenue and East 14th Street in order to channel traffic to the right and provide a sheltered area for the left turn lane. On May 30, the westernmost small V-shaped island had been completed, the large oblong center island had been poured, and the larger easternmost V-shaped island had not been commenced.

About 3 a.m.[1] on the morning of Saturday, May 30, 1970, Newson was driving his motorcycle in a westerly direction in the inside (center) lane of East 14th Street with a passenger, Dorothy Richardson. Newson was accompanied by his friend Benson, who was driving his motorcycle with a passenger, Newson's sister, Justine Taylor. Both motorcycles were traveling about 25-30 miles per hour. Just before the accident, Benson, for some unexplained reason, sped up and fortuitously swerved from the inside to the outside lane and bypassed the center island. Newson was aware of

---

[1]Newson's brief inexplicably asserts that the accident occurred at 1:30 a.m., although his deposition and the police records indicate that it occurred after 3 a.m.

Benson's movement to the right but did not see the center island or the seven three-legged barricades[2] with flashers[3] surrounding it. Newson and his passenger were thrown to the street and injured.

The area was lit by street lights on the north and south corners of 66th Avenue and on both sides of the island; thus, the barricades were readily visible from the Havens Court intersection, about 100 feet east of the 66th Avenue intersection. Benson indicated that the brightness of the overhead street lights mitigated the effect of the flashers on the barricades. Newson had been in the area on the Thursday preceding the accident and noticed the construction. About the time of the accident, he was looking at his speedometer. He did not have any warning of the islands, did not see the barricades, and did not know what he had collided with until after the accident. A pair of dark glasses, subsequently identified as belonging to Newson, were found after the accident in the street near his mortorcycle.

Newson's theory of the City's liability was based on the islands as a dangerous condition of which the City had constructive notice (Gov. Code, §§ 835, 835.2) and the City's failure to provide sufficient warning signs, as set forth in the suggested standard of its safety manual.

■ Newson first contends that the evidence is insufficient to support the verdict as to his contributory negligence. Preliminarily, we note that the proper contention on appeal is the lack of substantial evidence to support the verdict (*Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427, 429 [45 P.2d 183]). The above summary of pertinent facts reveals ample substantial evidence to sustain the defense verdict on the basis of Newson's contributory negligence. Newson had no explanation for his failure to see the barricades and flashers when he was 100 feet away; he did admit, however, that he was looking at his speedometer. He was also aware of Benson's movement to the right. Although Benson attempted to characterize his last minute lane change as fortuitous, the jury could easily have inferred that he saw the barricades and flashers and moved to avoid them.

■ Newson next contends that the trial court committed prejudicial error by failing to instruct, *sua sponte,* on momentary forgetfulness. The record indicates that such an instruction (BAJI No. 3.51) was originally requested by the defense, but was subsequently withdrawn. Accordingly,

---

[2]Benson, the investigating officers and two defense photographs conclusively established the presence of the barricades; Newson and two of his witnesses testified to the contrary.

[3]There was also conflicting testimony as to the flashers on the barricades. Benson, however, indicated that the three-four barricades that were knocked down by the center island were flashing at the time of the accident.

Newson cannot base his failure to request the instruction on the court's rejection of it. It is axiomatic that a party cannot complain of a trial court's failure to give an instruction on his theory of the case that he does not request and that is not supported by the evidence (*Hilts* v. *County of Solano,* 265 Cal.App.2d 161, 171 [71 Cal.Rptr. 275]), and the issue of its prejudicial effect is not properly before us. In any event, the record indicates that even after Newson testified on cross-examination that he had been in the area a few days earlier and noticed the construction, his counsel chose to continue his original theory of the case, namely, that Newson did not know of the island because of the City's failure to provide sufficient warning signs.

■ Newson next contends that the court erred in rejecting his requested instruction on strict liability. Newson cites no authority for this contention but relying on our general statement in *Barth* v. *B. F. Goodrich Tire Co.,* 265 Cal.App.2d 228, at page 243 [71 Cal.Rptr. 306], that contributory negligence is not a defense to strict tort liability, and a law review article[4] on probable areas of expansion of the doctrine of strict liability, imaginatively urges us to expand the doctrine of the products liability cases to construction contractors. While we appreciate the ingenuity and industry demonstrated, the argument ignores the fact that the Legislature, in enacting Government Code section 835, did not see fit to change the well established rule (first announced under the prior statute, former Gov. Code, § 53051), that the defense of contributory negligence is available to a public entity charged with liability for the dangerous condition of its property (*Torkelson* v. *City of Redlands,* 198 Cal.App.2d 354, 363 [17 Cal.Rptr. 899]; *Cheyney* v. *City of Los Angeles,* 119 Cal.App.2d 75 [258 P.2d 1099]; *Dalzell* v. *County of Los Angeles,* 88 Cal.App.2d 271 [198 P.2d 554]; *Lowe* v. *City of San Diego,* 8 Cal.App.2d 440 [47 P.2d 1083]; *Hibbs* v. *Los Angeles County Flood Control Dist.,* 252 Cal.App.2d 166, 172 [60 Cal.Rptr. 364]; *Hilts* v. *County of Solano,* 265 Cal.App.2d 161, 175 [71 Cal.Rptr. 275]; *Ulmer* v. *City of Los Angeles,* 263 Cal.App.2d 771 [69 Cal. Rptr. 754]; *Callahan* v. *City and County of San Francisco,* 249 Cal.App. 2d 696 [57 Cal.Rptr. 639]). We are aware of the recent cases that apply strict liability to mass developments of residential property (*Price* v. *Shell Oil Co.,* 2 Cal.3d 245, 254 [85 Cal.Rptr. 178, 466 P.2d 722]) and that decrease the plaintiff's burden of proof in products liability cases (*Cronin* v. *J. B. E. Olson Corp.,* 8 Cal.3d 121 [104 Cal.Rptr. 433, 501 P.2d 1153] and *Luque* v. *McLean,* 8 Cal.3d 136 [104 Cal.Rptr. 443, 501 P.2d 1163], indicate that a plaintiff needs only to prove that his injuries were *proximately caused* by the defect in the product. He need not prove that the

[4]38 So. Cal. L. Rev. 57.

defect is also "unreasonably dangerous.") However, the requirements of Government Code sections 830 and 835 are more stringent as they require a "dangerous condition" that "creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used" (Gov. Code, § 830).

■ Finally, Newson argues that the court committed prejudicial error in forcing him to disclose the fact that he had not filed federal or state tax returns. The record indicates that Newson sought damages for loss of income and testified that prior to the accident, he was a door-to-door salesman of educational literature, a warehouseman, and self-employed painting contractor, and that he earned about $700-$1,000 a month. He also indicated that he had no painting contractor's license, was not a member of the painters' union and had no records to substantiate his earnings prior to the accident. His counsel then objected to a question[5] pertaining to the filing of federal and state income tax returns on grounds of the privilege of self-incrimination and moved to strike the question. After a recess, other proceedings and consultation of authorities by all concerned, the court overruled the motion to strike, Newson's counsel withdrew his objection, and Newson testified that although he had earned over $600 a year, he had not filed any income tax returns. The court carefully explained its ruling to the jury, pointing out that Newson had a choice of answering the question or withdrawing his claim for earnings and "couldn't have his cake and eat it too." The court's ruling and underlying rationale was proper and amply supported by the law of this state in the analogous physician-patient privilege. As stated by our Supreme Court in *City & County of S. F. v. Superior Court*, 37 Cal.2d 227 at page 232 [231 P.2d 26, 25 A.L.R.2d 1418]: "The whole purpose of the privilege is to preclude the humiliation of the patient that might follow disclosure of his ailments. When the patient himself discloses those ailments by bringing an action in which they are in issue, there is no longer any reason for the privilege. The patient-litigant exception precludes one who has placed in issue his physical condition from invoking the privilege on the ground that disclosure of his condition would cause him humiliation. He cannot have his cake and eat it too."

Authorities in other jurisdictions are also in accord (see *Felsman v. Kessler* (1970) 2 Wn.App. 493 [468 P.2d 691]; *Laverne v. Laurel Hol-*

---

[5]As the question also sought to ascertain whether he had paid withholding tax for his alleged employees, his counsel also objected on grounds of relevancy to this aspect of the question. The court commented that it felt it was a relevant point on the question of self-employment.

*low,* 18 N.Y.2d 635 [272 N.Y.S.2d 780, 219 N.E.2d 294]; *Kisting*[6] v. *Westchester Fire Insurance Company* (W.D.Wis. 1968) 290 F.Supp. 141). In *Brown* v. *United States* (1958) 356 U.S. 148 [2 L.Ed.2d 589, 78 S.Ct. 622, 72 A.L.R.2d 818],[7] where a five-to-four decision declared that one who takes the stand and testifies in his own behalf in a civil case forgoes the right to invoke on cross-examination the privilege against self-incrimination regarding matters made relevant by his direct examination, the dissenting opinion by Justice Black pointed out two alternate methods of protecting the other party and the trier from a one-sided and distorted version of the truth which might occur when a civil defendant upon cross-examination invokes the privilege against self-incrimination: (1) such one-sided testimony might be struck in full or part, if the occasion warranted, with appropriate directions by the judge for the jury to disregard it as unreliable; or (2) in some instances where the prejudice to the opposing party was extreme and irremediable the court might even enter judgment in his favor. The dissenting opinion concluded that by such means the trial judge could protect the right of the opposing party to a fair trial, and at the same time avoid treating the testifying party as having waived his privilege, and avoid, accordingly, the imposition of contempt punishment upon his refusal to incriminate himself. As pointed out by the author of the annotation in 4 A.L.R.3d at page 545: "The courts in several jurisdictions have recognized the probability that injustice may result where the parties to litigation, exercising the constitutional privilege against self-incrimination, refuse to testify concerning matters which would otherwise be relevant and material to the issues of the pending cause. To permit a plaintiff to obtain the relief he sought of the court while refusing, on the ground of privilege, to testify concerning matters which, if known, could prevent his recovering, has appeared manifestly unfair to some courts, and they have regarded

---

[6]*Kisting* on its facts is most analogous to the instant case. There, the court granted the insurer's motion for summary judgment in the insured's action to recover under a fire policy. The insurer alleged arson as an affirmative defense; the insured refused to answer questions on cross-examination as to: 1) a document containing figures relating to the damages claimed; and 2) as to his income tax returns and whether he had drawn a salary. The court held that the insured's refusal to answer these questions constituted a breach of policy provisions and therefore precluded recovery.

[7]*Brown* v. *United States, supra,* was recently cited with approval by this court (Division One) in *People* v. *Williams,* 30 Cal.App.3d 502, at page 510 [106 Cal.Rptr. 324]. The *Brown* holding is to be distinguished from *Garrity* v. *New Jersey,* 385 U.S. 493 [17 L.Ed.2d 562, 87 S.Ct. 616], and *Spevack* v. *Klein,* 385 U.S. 511 [17 L.Ed.2d 574, 87 S.Ct. 625], where the parties invoking the Fifth Amendment were involuntarily thrust into choosing between the constitutional privilege and a severe penalty. In the instant case and other authorities cited, the choice was not an involuntary one beween two totally disadvantageous alternatives, as in *Garrity* and *Spevack, supra,* but a voluntary one between two alternatives, one of which could be employed to some advantage.

it as equally unjust to permit a defendant who testified freely on his own behalf on direct examination to refuse, on the ground of self-incrimination, to answer pertinent questions on cross-examination, where the answers, if known, could destroy his defense. Although acknowledging that parties to civil litigation have every right to claim the privilege against self-incrimination, some jurisdictions have shown a disinclination to permit either plaintiff or defendant to prevail while drawing around himself this cloak of privilege."

The judgment is affirmed.

Kane, J., and Rouse, J., concurred.