Filed 2/26/15  Smith v. Kern County Superintendent of Schools CA5

## NOT TO BE PUBLISHED IN THE OFFICAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| IAN D. SMITH,<br><br>        Plaintiff and Appellant,<br><br>                v.<br><br>KERN COUNTY SUPERINTENDENT OF SCHOOLS et al.,<br><br>        Defendants and Respondents. | F068766<br><br>(Super. Ct. No. CV-272036)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Sidney P. Chapin, Judge.

Ian D. Smith, in pro. per., for Plaintiff and Appellant.

Robinson & Kellar, Michael Kellar; Pollak, Vida & Fisher, Daniel P. Barer and Anna L. Birenbaum for Defendants and Appellants

-ooOoo-

Plaintiff Ian D. Smith sued defendants Kern County Superintendent of Schools and California Living Museum (CLM) after he and his daughter were attacked by a raccoon that had escaped from an exhibit at CLM.  A jury returned a verdict for defendants.  Smith now argues that the trial court erred in refusing jury instructions on strict liability (CACI No. 461) and negligence per se (CACI No. 418) requested by him

and in its handling of two instances of alleged juror misconduct. We affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

Smith filed a complaint in superior court on October 29, 2010. It alleged that on January 31, 2010, Smith and his eight-year-old daughter, McKinzie Smith, were visiting CLM when they were attacked by a raccoon, which was part of an exhibit and had escaped from its enclosure. The complaint alleged that the raccoon had escaped sometime earlier in the day, but CLM staff did nothing to warn or evacuate patrons. Further, the same raccoon had bitten someone 13 days before. The complaint claimed Smith and his daughter were both injured.

The complaint alleged causes of action for premises liability and general negligence. It cited Government Code sections 815.2 (public entity liable for act or omission of its employee) and 835 (public entity liable for dangerous condition of its property), which are provisions of the Government Claims Act.[1]

The first trial on the complaint commenced on October 29, 2012. The jury was unable to reach a verdict and a mistrial was declared on November 15, 2012.

A second trial began on October 7, 2013, and ended with a verdict on October 28, 2013. By a vote of nine to three, the jury found that there was no dangerous condition of property. Judgment was entered for defendants.

## DISCUSSION

### I.  Jury instructions

#### A.  Strict liability

In the first trial, Smith requested that the jury be instructed that defendants were strictly liable for harm caused by a wild animal owned by them. The instruction

---

[1]The Supreme Court has stated that "Government Claims Act" is a better short title for Government Code section 810 et seq., than the often-used "Tort Claims Act." (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 741-742.)

requested was CACI No. 461.[2]  The court ruled that strict liability for harm caused by wild animals was a common-law doctrine; therefore, it did not apply to government entities whose liability is limited by the Government Claims Act to statutory causes of action.  Further, defendants were not subject to vicarious strict liability for the conduct of their employees because the wild-animal doctrine imposes this liability on wild-animal owners, which the employees were not.  The court refused to give the instruction.

Smith did not request the instruction in the second trial.  At one point during the second trial, his counsel observed that the court had ruled in the first trial that strict liability was inapplicable, so he was requesting an instruction on negligence per se instead (which is discussed below).

Smith argues that the court erred in refusing the strict-liability instruction. Defendants argue that Smith forfeited the issue by not requesting the instruction in the second trial.  We will assume, however, that any such request would have been futile. The court's view was that, as a matter of law, Smith could not sue defendants on a theory of strict liability.  There is no reason to think the court would have considered ruling

---

[2]CACI No. 461 reads as follows:

"[*Name of plaintiff*] claims that [*name of defendant*]'s [*insert type of animal*] harmed [him/her] and that [*name of defendant*] is responsible for that harm.

"People who own wild animals are responsible for the harm that these animals cause to others, no matter how carefully they guard or restrain their animals.

"To establish [his/her] claim, [*name of plaintiff*] must prove all of the following:

"1.     That [*name of defendant*] owned a [*insert type of animal*];

"2.     That [*name of plaintiff*] was harmed; and

"3.     That [*name of defendant*]'s [*insert type of animal*] was a substantial factor in causing [*name of plaintiff*]'s harm."

3.

differently the second time.  (See *Cates v. Chiang* (2013) 213 Cal.App.4th 791, 816 [law does not require litigants to engage in futile acts as prerequisite to seeking relief from court].)

Nevertheless, we conclude that no reversible error has been shown.  We first consider the issue of defendants' *direct* liability.  Smith has not cited any authority supporting the proposition that, under California law, governmental defendants can be subjected to the common-law doctrine imposing strict liability for harm caused by wild animals.  He cites a number of cases in which this doctrine (or the similar doctrine for animals, whether wild or not, that are known to have dangerous propensities) was applied, but all of these involved private defendants.  (*Opelt v. Al G. Barnes Co.* (1919) 41 Cal.App. 776; *Baugh v. Beatty* (1949) 91 Cal.App.2d 786; *Hillman v. Garcia-Ruby* (1955) 44 Cal.2d 625.)

Under the Government Claims Act, a "public entity is not liable for an injury," "[e]xcept as otherwise provided by statute." (Gov. Code, § 815.)  The effect of this doctrine is "'to confine potential governmental liability to rigidly delineated circumstances .…'" (*Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 829.)  Absent any contrary authority, we can only conclude that the nonstatutory doctrine here at issue cannot be a basis for direct liability of governmental entities.

Smith cites a federal case from out of state, *Long v. United States* (D.C.S.C. 1965) 241 F.Supp. 286, but that case does not help him.  The United States was found strictly liable when an army helicopter, flying low over Long's farm, caused Long's mule team to lurch forward, leading to Long's injury by the equipment the team was pulling.  The ruling was based on a South Carolina statute that imposed absolute liability on the owners of aircraft when the operation of the aircraft caused injury to persons on the ground.  (*Id.* at p. 289.)  As we have said, California's Government Claims Act imposes direct liability on government entities only where there is a statutory basis for the liability.  A South Carolina statute imposing strict liability on owners of aircraft is not authority for the

4.

imposition of strict liability on a California government defendant for harm caused by a wild animal.

We turn next to the question of vicarious liability. Vicarious liability through employees is "a primary basis for liability on the part of a public entity .…" (*Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.) This is the effect of Government Code sections 815.2 and 820, subdivision (a), which provide, respectively, that a public entity is vicariously liable for harm caused by an act or omission of its employees in the course of employment, and that public employees are liable for their acts and omissions to the same extent as private people. Smith has made no argument, however, about why the trial court might have been wrong in stating that defendants' employees would not be liable under the doctrine here in question because they were not owners of the raccoon.

It is true that the case law refers to keepers of animals as well as their owners. (See *Hillman v. Garcia-Ruby, supra*, 44 Cal.2d at p. 627.) But the instruction Smith requested, CACI No. 461, refers only to owners, and Smith did not argue during the jury instruction conference that a strict liability instruction should be given because defendants' employees were keepers. The trial court cannot be faulted for failing to give a specific version of the instruction that Smith did not request. (*Barrera v. De La Torre* (1957) 48 Cal.2d 166, 170 [appellant not allowed to raise argument that trial court failed to give specific unrequested instruction]; *Hilts v. Solano County* (1968) 265 Cal.App.2d 161, 171; *Mayes v. Bryan* (2006) 139 Cal.App.4th 1075, 1090-1091 [unlike in criminal trial, court in civil trial has no duty to give unrequested instructions on its own motion].)

Further, Smith has not designated as part of the appellate record the reporter's transcripts of the evidence given in the case. For this reason, there is no basis upon which we could conclude that, given the facts, the trial court's ruling was erroneous because the jury could have found defendants vicariously liable through their employees as keepers. The record presents us with no information at all about the roles of any of defendants' employees. However likely it may appear in the abstract that some employee

of defendants must have been the raccoon's keeper, we cannot find that the court prejudicially erred in refusing a jury instruction where the applicability of the instruction depended on the evidence, and the party urging reversal has not provided a record of the evidence.  (See *Ballard v. Uribe* (1986) 41 Cal.3d 564, 574 [appellant has burden of showing reversible error, including instructional error, by an adequate record]; *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 574 [no reversal for error, including instructional error, unless miscarriage of justice appears after examination of entire case, including evidence].)

### B.      *Negligence per se*

Smith argues that the trial court also erred in refusing his request in the second trial for CACI No. 418, which reads:

"[*Insert citation to statute, regulation, or ordinance*] states: _____

"If you decide

"1.      That [*name of plaintiff/defendant*] violated this law and

"2.      That the violation was a substantial factor in bringing about the harm,

"then you must find that [*name of plaintiff/defendant*] was negligent [unless you also find that the violation was excused].

"If you find that [*name of plaintiff/defendant*] did not violate this law or that the violation was not a substantial factor in bringing about the harm [or if you find the violation was excused], then you must still decide whether [*name of plaintiff/defendant*] was negligent in light of the other instructions."

This is the instruction given in cases in which a defendant can be held to be negligent per se because its conduct violated a law and caused harm to a plaintiff.

The record does not show what law Smith was claiming defendants violated.  This alone would be reason enough to reject Smith's contention on appeal.  As we have stated, an appellant is required to demonstrate error by an adequate record.

6.

Further, Smith has not demonstrated that the trial court was mistaken in the reason it gave for refusing the instruction. The trial court stated that liability for negligence per se can be imposed on a government defendant under Government Code section 815.6 (public entity liable for failure to perform mandatory duty to protect public from risk of particular injury). The court observed that the complaint did not plead a failure to perform a mandatory duty under that section. It further stated that the case had "been pursued throughout" by Smith upon other grounds. For this reason, the court concluded that the requested instruction did not apply. Smith did not request leave to amend the complaint.

Code of Civil Procedure section 607a provides that, in a jury trial before the first witness is sworn, the parties shall submit proposed jury instructions "covering the law as disclosed by the pleadings." Before closing arguments, counsel may also submit jury instructions "upon questions of law developed by the evidence and not disclosed by the pleadings." The court's statements amounted to a ruling that Smith's request for CACI No. 418 was a request for an instruction on a question not disclosed by his complaint and also not developed during the trial. Smith does not now contend that the question was disclosed by his complaint, so he can only be arguing that the court was mistaken in believing the question was not developed by the evidence during the trial. As we have mentioned, however, Smith has not provided transcripts of the evidence presented during the trial. This makes it impossible to evaluate his argument, which, therefore, must be rejected.

In his appellate brief, Smith cites a federal regulation, 9 Code of Federal Regulations part 3.125(a) (2013). This provision is part of a set of regulations on facilities in which wild animals are kept. It states: "*Structural strength.* The facility must be constructed of such material and of such strength as appropriate for the animals involved. The indoor and outdoor housing facilities shall be structurally sound and shall be maintained in good repair to protect the animals from injury and to contain the

7.

animals." It is unclear what argument Smith is making based on this provision, but we will assume he is claiming the regulation was violated and that this supported the giving of an instruction on negligence per se.

The regulation is of no assistance to Smith. The appellate record provided to us does not indicate that Smith cited this regulation in the trial court, so the issue of whether it provides any support to any of his contentions has not been preserved for appellate review. Further, because Smith has not designated as part of the appellate record the reporter's transcripts of the evidence given in the case, we cannot say a jury instruction based on an alleged violation of the regulation would have been supported by the evidence.[3]

Smith suggests in his appellate brief that, as an alternative to negligence per se, the court should have instructed the jury on negligence. The court did, however, give a negligence instruction in accordance with CACI No. 400, as follows:

> "Ian Smith and McKinzie Smith claim that they were harmed by [defendants'] negligence. To establish this claim, Ian Smith and McKinzie Smith must prove all of the following:
>
> "1.    That [defendants were] negligent;
>
> "2.    That Ian Smith and McKinzie Smith [were] harmed; and
>
> "3.    That [defendants'] negligence was a substantial factor in causing Ian Smith and McKinzie Smith's harm."

The court also instructed the jury in accordance with CACI No. 401, which explains the reasonable-care standard for negligence.

---

[3]With his appellate brief, Smith submitted a copy of a letter to defendants from the United States Department of Agriculture, accompanied by a form, stating that defendants were being given a warning of a possible violation of 9 Code of Federal Regulations part 3.125(a) (2013). On September 2, 2014, this court granted defendants' motion to strike this material on the ground that it did not conform to California Rules of Court, rule 8.204(d).

The verdict form, however, did not give the jury the opportunity to find defendants liable on a theory of negligence as distinct from the theory of a dangerous condition of property. Question No. 1 on the verdict form asks whether defendants owned or controlled the property. The jury answered yes. Question No. 2 asked whether the property was in a dangerous condition. The jury answered no. The form instructed the jury that if its answer to question No. 2 was no, it should stop, answer no further questions, and have the presiding juror sign and date the form.

We do not know why the verdict form omitted the possibility of finding defendants liable for negligence even if they were not liable for a dangerous condition of property. The record designated by Smith includes no transcript of discussion between the court and parties about the verdict form. It reflects no objection by Smith to the omission of the option of finding defendants liable for negligence.

We ordinarily do not consider claims of error where an objection could have been, but was not, made in some appropriate form at trial. It is usually unfair to the trial court and the adverse party to take advantage of an error on appeal which could have been corrected during the trial. (*People v. Saunders* (1993) 5 Cal.4th 580, 590; *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1.) We conclude that the issue is forfeited by the lack of a record of any objection in the trial court.

Further, the lack of transcripts of the trial testimony means we cannot determine whether the evidence warranted the inclusion in the verdict form of an option based on the premise that defendants' employees might have been negligent. Smith's claim thus also fails for lack of an adequate record upon which to evaluate it.

## II.    *Alleged juror misconduct*

Smith argues that we should reverse the judgment because of two incidents involving jurors, which he describes as prejudicial juror misconduct.

The first incident took place on October 15, 2013. Nathan Hodges, an attorney for Smith, informed the court that he had noticed a woman, Roxanne Web, talking with Juror

9.

No. 12.  Web had been observing the trial and told Hodges she was an employee of SISC. Smith's brief informs us that SISC is Self-Insured Schools of California, an insurer of defendants.

The court questioned Web.  Web said the juror told her it was his first time serving on a jury.  Web said it was a great opportunity and a great civil service.  The juror replied that he did not know how he got away without serving for so long.  Web and the juror said good afternoon.  Web did not mention to the juror her affiliation with SISC or say she had any connection with the case.  There were no other jurors around at the time. Web said she knew she should not talk to jurors and was trying to avoid the conversation.

The court also questioned Juror No. 12, who said he told Web he was tired and was happy to be doing jury duty.  He did not discuss the case or the witnesses' testimony with Web and did not think anything happened that would affect his ability to listen and deliberate objectively.

The court asked Hodges and Smith's other attorney, Greg Muir, for their comments.  The only issue raised was that Web apparently did not immediately identify herself as a SISC employee when first contacted about the matter by the bailiff:

> "THE COURT:  All right.  I do not see any difficulty caused by this. We have to deal with it.  Further admonishment to counsel, but I don't see any problem created for purposes of this trial.  [¶]  Is there something for the record, Mr. Muir?

> "MR. MUIR:  Uhm, other than it's the—the only thing I want to put on the record was it was disturbing when she was asked who she was, that she did not identify herself as being aligned with the parties.  She specifically said, 'Just an observer.'  I'm not saying she can't observe, obviously, but it's interesting that she was not straightforward about who she was, and that—to me, that causes some concern about her reliability as to what she represented.  [¶]  But, apparently, the juror didn't have a—a terribly different view of it.

> "MR. HODGES:  He doesn't remember.

> "MR. MUIR:  But he doesn't remember.  He said, 'I don't remember,' and this and that.

10.

"THE COURT: Okay. I don't hear that as a motion for mistrial.

"MR. MUIR: No."

Smith's counsel did not state any objection. The court admonished all counsel to make sure that anyone present who was in any way affiliated with the parties would not talk to jurors. No further action was taken.

The second incident took place on October 25, 2013, during the jury's deliberations. Juror No. 2 told the court she was having a conflict with another juror or jurors, felt sick, and was under stress because of family members' illnesses:

"THE COURT: [¶] … [¶] I understand there are some difficulties in the jury room.

"JUROR NO. 2: Yes.

"THE COURT: What's the situation for you?

"JUROR NO. 2: I just don't feel like I count for anything or that what I say matters. [¶] And I heard one juror say something [negative] about me to another juror.

"THE COURT: This happened with more than one juror?

"JUROR NO. 2: And I'm physically getting ill.

"THE COURT: All right. Do you have—you think it's precluding your ability to deliberate on the case?

"JUROR NO. 2: With these people, yes.

"THE COURT: Questions, Plaintiff?

"JUROR NO. 2: Well, there's just one person in particular that I can't—I can't be in the same room with to deliberate.

"THE COURT: All right. And the reporter seemed to indicate that there were also some personal problems.

"JUROR NO. 2: This person said something about me to another juror.

"THE COURT: But, I mean, otherwise outside of the jury context?

11.

"JUROR NO. 2:  Other than that, no problems.  [¶]  I do have some family problems as far as I do have a sister in Oregon with congestive heart failure and renal failure, and a brother who has been readmitted, possibly, for another stroke in Alaska.  [¶]  But just physically, just coming and sitting physically for a week long and driving over here and back every night is physically about as much as I can take without all the emotional.  [¶]  And I don't feel that they're—I don't feel like they are addressing the questions.  They won't address everything.

"THE COURT:  And I don't want to know about the deliberations of the jury.  [¶]  Without getting into any specifics, are you able to state your position?  Have you been able to state your position?

"JUROR NO. 2:  No.

"THE COURT:  With regard to any—I mean, some, perhaps, limited facts or issues in the case?

"JUROR NO. 2:  No.

"THE COURT:  Comment, or questions?

"MR. MUIR:  Did I see you tear up your notes?  Was that your notes from the trial?

"JUROR NO. 2:  It doesn't matter what my notes have on them.

"[MR. MUIR]:  Okay.  No comment, Your Honor.

"THE COURT:  Defense?

"MR. KELLAR:  Nothing, Your Honor."

The court held a sidebar conference with counsel and then excused the juror.  The jury was instructed to start deliberations again from the beginning with an alternate juror.  No party objected.

The record indicates that, in the trial court, Smith's counsel accepted the court's resolution of these juror issues and made no objection of any kind.  The issue of any possible error is forfeited.  (*Dimmick v. Alvarez* (1961) 196 Cal.App.2d 211, 217 [issue of improper conversation between jurors and counsel forfeited by trial counsel's failure to object or move for mistrial].)

12.

## *DISPOSITION*

The judgment is affirmed.  The parties are to bear their own costs on appeal.

_____

Smith, J.

WE CONCUR:


_____

Detjen, Acting P.J.


_____

Peña, J.

13.