Filed 8/14/25  Longmire v. City of Brentwood CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DWAINE LONGMIRE, as Guardian ad Litem, etc.,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF BRENTWOOD,<br><br>    Defendant and Respondent. | A164240<br><br>(Contra Costa County<br>Super. Ct. No. C18-01962) |

Two young sisters, ages 9 and 10, were crossing an intersection in the City of Brentwood one morning when one of the children was struck by a car being driven by a driver blinded by the morning sun and, as her sister watched, was propelled 75 feet into the air.  A guardian ad litem filed suit against the driver and the City of Brentwood (the City), alleging against the City claims for negligence and dangerous condition of public property.  The City moved for summary judgment, which the trial court granted in a comprehensive 15-page order.  Plaintiff appeals.  We affirm.

## BACKGROUND

**The General Setting**

On the morning of September 17, 2018, two sisters, referred to in the record as T.L. and N.L., were walking in a crosswalk at the intersection of Guise Way and Balfour Road, when, at approximately 7:42 a.m., T.L. was

1

struck by a car driven by Shirley Padgett, who was driving eastbound on Balfour Road directly into the morning sun. Padgett had driven through this intersection over 100 times during her usual commute to work, and, as she would later testify at deposition, was aware of the glare of the morning sun and the intermittent shadowing of the roadway and their effect on the visibility of the road—factors apparent to all users of the intersection. Padgett was not wearing sunglasses and was cited by the police for the accident.

The subject intersection has marked pedestrian crosswalks in all four directions. There are stop signs for traffic entering the intersection from Guise Way, but no stop sign or traffic light for traffic on Balfour Road. Balfour Road in the area of the accident is an essentially straight road which runs east-west, with a single traffic lane in each direction with a marked bicycle shoulder, a lane for direct traffic, and a left turn pocket in each direction, separated by a raised concrete and grass median. There were no reported automobile versus pedestrian accidents at that intersection in the five years before the accident here.

**The Proceedings Below**

On October 1, 2018, Dwaine ("Pete") Longmire, as guardian ad litem for T.L. and N.L., filed a complaint for personal injury naming only one defendant, Padgett. At some point, apparently May 22, 2019, Longmire filed a first amended complaint, adding the City as a defendant. The amended complaint is not in the record, but as best we can glean from the City's brief on its motion below and the trial court's order, the second cause of action in the amended complaint is designated "premises liability," and includes a claim for negligence (count one) and dangerous condition of public property (count three).

2

In September, the City filed its Answer.

Somewhere along the way, apparently in early 2021, Padgett settled, as the register of actions contains various entries indicating a minor's compromise and stipulation for good faith settlement.

In May 2021, the City moved for summary judgment/summary adjudication. The moving papers were extensive, and included a 25-page memorandum of points and authorities and four lengthy declarations that among them authenticated some 17 exhibits—exhibits that plaintiff lists one-by-one in his opening brief. All told, the City's moving papers totaled some 314 pages. The motion was set for hearing on September 21.

On September 7, plaintiff filed his opposition, included within which was a 10-page memorandum of points and authorities, most of which was not pertinent to the issue here. Specifically, six of the 10 pages addressed the issue of design immunity, an issue the trial court did not address. And as to the issue involved here, dangerous condition of public property, the few pages in plaintiff's opposition set forth what it referred to as "multiple triable issues of fact," going on to list the claimed issues in a one-sentence-paragraph that contained not one reference to the record. Not one.

Then, after attempting to distinguish two of the cases the City relied on, plaintiff's opposition summed up with this short paragraph: "Clearly the plaintiffs herein have alleged unusual characteristics about the crosswalk such as visual obstructions that would establish a dangerous condition; including for example sun glare, in combination with shadowing from trees creating a visual obstruction and thereby dangerous condition."[1]

---

[1]    As to what plaintiff supposedly "alleged," it has no significance here. As the leading practice treatise puts it: "Neither party can rely on *its own* pleadings (even if verified) as evidence to support or oppose a motion for

3

On September 15, the City filed its reply, along with objections to plaintiff's evidence.

On September 16, the court heard an ex parte application brought by plaintiff that sought among other things evidentiary sanctions against the City related to alleged misconduct surrounding the recent deposition of the City that concerned, among other things, landscaping and tree trimming. In addition to seeking sanctions, plaintiff asked the court to consider additional evidence as part of its ruling on the motion. The court denied the ex parte application insofar as it sought sanctions, but did accept and consider additional evidence as part of ruling on the motion. The court also continued the hearing on the motion to September 28, so that the court would have adequate time to consider the newly-received evidence, indicating it would post a tentative ruling on September 24.

On September 24, plaintiff submitted objections to the City's evidence. That same day, the court posted a tentative ruling, granting the motion on the basis that there was no triable issue of material fact concerning the existence of a dangerous condition on public property.

On September 28, the court heard extensive argument from counsel, and took the motion under submission.

On October 13, the trial court filed a 15–page order granting the motion, which holding was supported by a lengthy and detailed exposition of the applicable law and the factual record before the court. The order also

_____

summary judgment or summary adjudication. [See *College Hosp., Inc. v. Sup. Ct. (Crowell)* (1994) 8 C[al.]4th 704, 720, fn. 7 (citing text); [citations].]" (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2025) ¶ 10:51.30.)

4

addressed plaintiff's 34 objections, sustaining two and overruling the other 32.

Judgment was entered on November 15, from which plaintiff filed a timely appeal.

## DISCUSSION

### Summary Judgment Law and the Standard of Review

Code of Civil Procedure section 437c, subdivision (c) provides that summary judgment is properly granted when there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code of Civ. Proc., § 437c, subd. (c).)  As applicable here, a moving defendant can meet its burden by demonstrating that "a cause of action has no merit," which it can do by showing that "[o]ne or more of the elements of the cause of action cannot be separately established . . . ."  (Code of Civ. Proc., § 437c, subd. (o)(1); see also *Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 486–487.)  Once a defendant meets this burden, the burden shifts to plaintiff to show the existence of a triable issue of material fact.  (§ 437c, subd. (p)(2).)

"On appeal '[w]e review a grant of summary judgment de novo; we must decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law.  [Citations.]' (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.)  Put another way, we exercise our independent judgment, and decide whether undisputed facts have been established that negate plaintiff's claims.  (*Romano v. Rockwell Internat., Inc.*, *supra*, 14 Cal.4th at p. 487.)  As we put it in *Fisherman's Wharf Bay Cruise Corp. v. Superior Court* (2003) 114 Cal.App.4th 309, 320: '[W]e exercise an independent review to determine if the defendant moving for summary judgment met its burden of establishing a complete defense or of negating each of the plaintiff's theories and establishing that the action

5

was without merit.' (Accord, *Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972.)

" '. . . [W]e accept as true the facts . . . in the evidence of the party opposing summary judgment and the reasonable inferences that can be drawn from them.' [Citation.] And we must ' "view the evidence in the light most favorable to plaintiff[] as the losing part[y]" and "liberally construe plaintiff['s] evidentiary submissions and strictly scrutinize defendant's own evidence, in order to resolve any evidentiary doubts or ambiguities in plaintiff['s] favor." ' (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 96–97.)" (*Nazir v. United Airlines Inc.* (2009) 178 Cal.App.4th 243, 253–254.)

In addition to the above is the well-recognized admonition, set forth, for example, in *Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 230 this way: "On review of a summary judgment, the appellant has the burden of showing error, even if he did not bear the burden in the trial court. [Citation.] . . . '[D]e novo review does not obligate us to cull the record for the benefit of the appellant in order to attempt to uncover the requisite triable issues. As with an appeal from any judgment, it is the appellant's responsibility to affirmatively demonstrate error and, therefore, to point out the triable issues the appellant claims are present by citation to the record and any supporting authority. In other words, review is limited to issues which have been adequately raised and briefed.' (*Lewis v. County of Sacramento* (2001) 93 Cal.App.4th 107, 116.)"

6

**Plaintiff's Appeal Has No Merit:  Summary Judgment Was Proper**

### Introduction

In light of the above rules, we begin our analysis with reference to plaintiff's opening brief that, following its introduction, begins with a one-page statement of "appealability" and "statement of the case" and two pages of claimed "summary of facts."  The brief then turns to its 22 pages of argument, which begins with the standard of review, followed by three substantive arguments that read as follows:

"B.     The City Did Not Meet Its Initial Burden"

"C.     The Court Did Not Properly Execute Its Statutory Duty Under 830.2 of the Government Code"

"D.     Plaintiffs Have Established a Triable Issue of Fact Exists Regarding A Dangerous Condition".  Two of three arguments are out of place.

Argument B, to which plaintiff devotes over nine pages, is that the City "did not meet its initial burden," an argument obviously addressed to the dangerous condition issue relied on by the trial court.  Passing over the question of whether plaintiff's treatment of the record addresses the extensive evidence introduced by the City—evidence acknowledged in plaintiff's own brief—we note that plaintiff did not make this argument below.[2]  It has no place here.

As we recently confirmed in *Doe WHBE 3 v. Uber Technologies, Inc.* (2024) 102 Cal.App.5th 1135, 1152:  "It is well settled . . . 'that issues not raised in the trial court cannot be raised for the first time on appeal.  [Citations.]'  (*Estate of Westerman* (1968) 68 Cal.2d 267, 279, fn. omitted; see

---

[2]     Plaintiff's opposition below did argue that the City "failed to meet their [*sic*] burden regarding design immunity."

*Cable Connection, Inc. v. DIRECTV, Inc.* (2008) 44 Cal.4th 1334, 1350, fn. 12.)' (*Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 603; see generally Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2023) ¶ 8:229.)" The rule is " ' "based on fairness—it would be unfair, both to the trial court and the opposing litigants, to permit a change of theory on appeal." [Citation.]' " (*Hewlett Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 548.)

In any event, the argument has no merit, as the trial court expressly held. In the trial court's words:

"[T]he City meets its initial burden by adducing the following facts:

"The approach to the intersection is essentially straight and level in both directions (SSUMF No. 14);

"There is no vegetation that obstructs the line of sight between the crosswalk and oncoming eastbound traffic (SSUMF No. 22);

"Padgett (the driver) was aware of the glare and the shadows, having driven through the subject intersection many times (SSUMF Nos. 23–26);

"In the five years preceding the subject accident, there were no vehicle versus pedestrian accidents at the subject intersection (SSUMF No. 39).

"In light of *Thimon* [*v. City of Newark* (2020) 44 Cal.App.5th 745, 755 (*Thimon*)], this evidence is more than sufficient to shift the burden to Plaintiffs to raise a triable issue of material fact to avoid summary judgment."

Plaintiff's second argument, that the trial court did not "execute its statutory duty," is also misplaced, especially as our review is de novo. In other words, even if the trial court did not do what plaintiff accuses it of not doing—which, we hasten to add, plaintiff does not demonstrate—it would not

8

matter for purposes of our review.  In any event, and once again, the argument has no merit.

Following a reference to Government Code section 830.2, plaintiff's second argument begins with this:  "The statutory duty here is in the first instance to view the evidence, let alone most favorably to the plaintiff.  In this case it is not at all clear the court did in fact view for consideration all the evidence; and secondly in her order specifically rejected assessment of the scene images as a basis for her opinion.  Without consideration of the scene images there is no way the Court could have viewed the evidence in a manner 'most favorably to the plaintiff' as required by law."

And from there the argument proceeds for some seven pages, making general statements such as the trial court's order "overstates the fact in evidence," with references that are "vague and [ambiguous]."  The argument asserts that certain evidence "was not referenced by the Court at any time," which such claimed "non-review . . . supports the contention the Court did not perform its statutory duty."  And plaintiff adds, the court did not consider the "totality of the evidence" or consider certain exhibits.[3]  In short, it appears that plaintiff's argument is a dispute with the trial court's reasoning, not the adequacy of the order.  And finally, to the extent plaintiff argues the court did not consider all the evidence, we note the trial court's express statement that it did.

While it is not clear, plaintiff may be arguing that some of the trial court's evidentiary rulings were wrong, as early in his brief plaintiff asserts that the trial court "relied on evidence to support its opinion for which an

---

[3]     Earlier in his brief, plaintiff states the court "apparently" did not consider certain exhibits.

9

objection by the Plaintiffs [*sic*] was sustained." If in fact plaintiff is attempting to make such an argument, it would fail light of several rules of appellate review, including that it is plaintiff's " 'burden on appeal to affirmatively challenge the trial court's evidentiary ruling, and demonstrate the court's error' " (*Salas v. Department of Transportation* (2011) 198 Cal.App.4th 1058, 1074 (*Salas*) [plaintiff must identify the specific objection or evidentiary ruling that concerned the testimony]; see *In re S.C.* (2006) 138 Cal.App.4th 396, 406 [as a general matter, to preserve issue for appeal party must raise an objection in the trial court and "cite to the record showing exactly where the objection was made"].) As one court described the inadequate brief of appellant Baltar: "her opening brief does not identify distinct evidentiary rulings or provide legal argument tailored to the grounds upon which [the] evidentiary objections were sustained. She has therefore 'failed to carry [her] burden to affirmatively show error in the trial court's rulings on the evidentiary objections . . . .' Baltar's challenge to the trial court's evidentiary rulings is therefore forfeited." (*Janney v. CSAA Ins. Exch.* (2021) 70 Cal.App.5th 374, 391.)

**Plaintiffs Failed to Raise a Triable Issue of Material Fact**

We turn to plaintiff's last argument, D, which as quoted above is that "Plaintiffs Have Established a Triable Issue of Fact Exists Regarding a Dangerous Condition." We disagree, in light of the law of dangerous conditions of public property.

Five years ago we had an appeal that involved facts strikingly similar to those here. This was the case of *Thimon*, *supra*, 44 Cal.App.5th 745, where we described the allegations as follows: " 'On December 6, 2013 at approximately 7:30 in the morning, Destiny Thimon was on her way to school, and reached the corner of Cherry Street and Redeker Place. As

10

Cherry Street at this intersection was not controlled by signals or stop signs, and contained no pedestrian activated signals or lights, [Thimon] waited for traffic to abate before proceeding. After being in the crosswalk approximately 6.22 seconds, she was struck by a vehicle [driven by Bihn Soudachanh] traveling on Cherry Street, was thrown over 50 feet by the impact, and suffered, inter alia, a major head injury, fracture of her femur, and facial fractures. The operator of the offending vehicle was driving at a rate under the 45 mph posted speed limit but had not seen [Thimon] due to glare from the morning sun.' " (*Thimon, supra*, 44 Cal.App.5th at p. 748.) And, Thimon further alleged " 'due to forced use of an unprotected, uncontrolled crosswalk particularly at a time of year and time of day when glare from the morning sun obscures visibility of pedestrians,' " the crosswalk was a dangerous condition of public property. (*Thimon, supra*, 44 Cal.App.5th at pp. 748–749.)

Defendant City of Newark moved for summary judgment on the ground the undisputed evidence demonstrated there was no dangerous condition. Thimon's opposition asserted, among other things, that the city's motion "failed to 'attack[] the combination of circumstances which made this marked crosswalk a dangerous condition'; and that the installation of a crosswalk at the Cherry/Redeker intersection created a dangerous condition." (*Thimon, supra*, 44 Cal.App.5th at p. 749.)

The trial court granted the city's motion, noting that the driver had testified he was "very familiar" with the intersection and that Thimon had "failed to identify any factor other than the glare of the sun" that prevented the driver from seeing her in the crosswalk. (*Thimon, supra*, 44 Cal.App.5th at p. 753.) The trial court "also found probative . . . the evidence showing

11

that over a 10-year period preceding the accident there had been no vehicle versus pedestrian accidents within the subject crosswalk." (*Ibid.*)

We affirmed, in an opinion whose analysis began with this exhaustive discussion of the law of dangerous conditions of public property:

"The governing law . . . is the Government Claims Act (Gov. Code, § 810 et seq. (the Act)).[4] 'Section 835 . . . of the [Government Claims] Act . . . prescribes the conditions under which a public entity may be held liable for injuries caused by a dangerous condition of public property. [Citation.] Section 835 provides that a public entity may be held liable for such injuries "if the plaintiff establishes [1] that the property was in a dangerous condition at the time of the injury, [2] that the injury was proximately caused by the dangerous condition, [and] [3] that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred.' In addition, the plaintiff must establish [4] that either: (a) '[a] negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition. . . , or' (b) '[t]he public entity had . . . notice of the dangerous condition . . . a sufficient time prior to the injury to have taken measures to protect against the dangerous condition.' " ' (*Cordova v. City of Los Angeles* (2015) 61 Cal.4th 1099, 1105 (*Cordova*).)

" ' The Act defines a " '[d]angerous condition' " as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be

---

[4] All further undesignated statutory references are to the Government Code.

used." (§ 830.)  Public property is in a dangerous condition within the meaning of section 835 if it "is physically damaged, deteriorated, or defective in such a way as to foreseeably endanger those using the property itself." ' (*Cordova*, *supra*, 61 Cal.4th at p. 1105.)  'But public property has also been considered to be in a dangerous condition "because of the design or *location* of the improvement, the interrelationship of its structural or natural features, or the presence of latent hazards associated with its normal use." ' (*Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 149 (*Bonanno*).)  'A dangerous condition of public property can come in several forms and may be based on an "amalgam" of factors.' (*Salas*[, *supra*,] 198 Cal.App.4th [at p. ] 1069.)  'A condition is not dangerous "if the trial or appellate court, viewing the evidence most favorably to the plaintiff, determines as a matter of law that the risk created by the condition was of such a minor, trivial, or insignificant nature in view of the surrounding circumstances that no reasonable person would conclude that the condition created a substantial risk of injury when such property or adjacent property was used with due care in a manner in which it was reasonably foreseeable that it would be used." (§ 830.2.)' (*Cordova*, at pp. 1104–1105.)" (*Thimon*, *supra*, 44 Cal.App.5th at p. 753–754.)

And we went on to hold:  "[A] public entity is not required to assume that third parties such as Soudachanh will act negligently or recklessly.  'As one court has observed, any property can be dangerous if used in a sufficiently improper manner.  For this reason, a public entity is only required to provide roads that are safe for reasonably foreseeable careful use.  [Citation.]  "If [ ] it can be shown that the property is safe when used with due care and that a risk of harm is created only when foreseeable users fail to exercise due care, then such property is not 'dangerous' within the meaning of

13

section 830, subdivision (a)." ' (*Chowdhury v. City of Los Angeles* (1995) 38 Cal.App.4th 1187, 1196.)" (*Thimon, supra,* 44 Cal.App.5th at pp. 754–755.)

In short, a public entity is only required to maintain its property in a way that is safe for "careful use." (*Chowdhury v. City of Los Angeles, supra,* 38 Cal.App.4th at p. 1196.) As we put it in *Sun v. City of Oakland* (2008) 166 Cal.App.4th 1177, 1183: " 'If it can be shown that the property is safe when used with due care and that a risk of harm is created only when foreseeable users fail to exercise due care, then such property is not 'dangerous' within the meaning of section 830, subdivision (a).' " (Accord, *Schonfeldt v. State of California* (1998) 61 Cal.App.4th 1462, 1466 [dangerous condition only if the property creates a substantial risk of injury when used with due care].)

We said in *Thimon* that " 'Ordinarily, the existence of a dangerous condition is a question of fact, but whether there is a dangerous condition may be resolved as a question of law if reasonable minds can come to but one conclusion. [Citation.] "[I]t is for the court to determine whether, as a matter of law, a given defect is not dangerous. This is to guarantee that cities do not become insurers against the injuries arising from trivial defects." ' [Citation.] " (*Thimon, supra,* 44 Cal.App.5th at p. 755.)

Numerous decisions have affirmed summary judgment for various public entities holding as a matter of law that no dangerous condition was demonstrated, including opinions from this court (see, e.g., *Thimon, supra,* 44 Cal.App.5th at p. 755 and *Sun v. City of Oakland, supra,* 166 Cal.App.4th at p. 1197) and from our colleagues (see, e.g., *Cerna v. City of Oakland* (2008) 161 Cal.App.4th 1340, 1348–1352).

Here we add another.

Plaintiff's argument D proceeds for slightly over five pages, and begins with quotation of section 830, the Law Revision Comments to it, and then

14

quotation of section 835, after which it asserts this: "The combination of factors in this case establish there is a triable issue of material fact as to the existence of a dangerous condition and the liability of the City for the injuries caused by the dangerous condition. The fact is this is not just a simple sun in the eyes case as the respondents want to characterize it. The combination of other factors present intensify the initial risks association with the glare of the sun causing it to rise to a level of a dangerous condition. *Hilts v. County of Solano*, 265 CA2d 161, 165–167."

The argument goes on in an attempt to distinguish *Thimon*[5], and then sums up plaintiff's position with a repeat reference to the "combination of factors in this case," and essentially concludes with this sentence: "The combination of factors in this case establishes a genuine dispute of material fact that there was a dangerous condition, and that the City is liable for the injuries caused by the dangerous condition." The brief then lists, in bullet-point-like-dash fashion, the apparent "combination of factors"—17 in all.

The first 10 factors refer to various matters pertaining to trees in the vicinity of the intersection, the first eight of which apparently refer to the

---

[5] An attempt that in part misrepresents that case, asserting that the intersection in *Thimon* had "various control devices in place." To the contrary, we noted that no control signals or signs were in place at the intersection (*Thimon*, *supra*, 44 Cal.App.5th at p. 748), going on to note that long–standing case law establishes that a crosswalk is not in a dangerous condition just because of the absence of signals or other markings. (*Id*. at p. 762.) Regardless, the evidence here was that all necessary and proper signage and striping was in place at the intersection—a fact, not incidentally, conceded by plaintiff's expert.

City's conduct vis–a–vis the trees. [6] The final seven factors are random argumentative statements.[7]

---

[6] The ten items are (all record citations omitted):

"–The crosswalk was placed as part of City improvements to subdivisions 8004 and 7844 for which there was no approved landscaping plan.

"–In the area of the intersection, and in particular on the corner adjacent to the crosswalk the City planted Raywood Ashe Trees.

"–The Raywood Ashe is not a tree authorized to be planted in the City of Brentwood under the City's policy found in the City's Urban Forest Guidelines.

"–Had the City followed their own policies the Raywood Ashe would not have been planted at the intersection.

"–The City was responsible for maintenance of trees, including the specific Raywood Ashe.

"–The City policies required the City to maintain the tree according to ANSI standards.

"–The City failed to maintain the Tree according to ANSI standards.

"–The failed maintenance resulted in a tree that over time developed a significant and excessively dense canopy and protruded over the sidewalk and street all in a manner that was in violation of ANSI standards and City policy.

"–Due to the failure to maintain the tree according to ANSI standards, at various times of the year the tree casts a very dense dark shadow over the sidewalk and crosswalk.

"–At certain times throughout the year a driver approaching the intersection would not realize a person was in the crosswalk due to the combination of the glare of the sun and the dense dark shadow."

[7] These statements are: "–The hazard of visual obstruction was 'increased or intensified' by the City's negligence and the failure to mitigate the increased or intensified risk the City created.

"–Absent appropriate mitigation a driver would not have sufficient time to stop to avoid striking a pedestrian in the crosswalk when experiencing the effects of the combination of sun glare and the dense shadowing.

16

We begin by noting that the 10 items pertaining to the trees refer to their "planting," their "maintenance," and their "failed maintenance." Plaintiff's opening brief early on refers to the "negligent maintenance of trees." And the closing page of plaintiff's argument sums up with this: "The circumstances that existed were caused by the City creating a dangerous condition as they first planted an inappropriate tree in violation of City Policy. They then were negligent in maintenance of the tree in violation of their own policy and ANSI regulations. Their negligence over time allowed the tree to grow essentially out of control relative to the safety regulations articulated in ANSI and according to City policy. Over time as a result of the negligent maintenance the tree not only grew an overly dense canopy but also grew limbs over the sidewalk and street at inappropriate sizes and levels. The result of the negligent maintenance was that the tree grew a canopy that created a extreme visual obstruction when coupled with the glare of the sun."[8]

---

"–A pedestrian in the crosswalk would not suspect the oncoming motorist could not see them in the crosswalk.

"–This is particularly true for younger children the ages of plaintiffs.

"–School age children are well known to utilize the subject crosswalk.

"–The crosswalk is unmarked and uncontrolled with no warnings for drivers to mitigate the visual obstruction created by the prevailing conditions.

"–As a result of the dangerous condition, T.L. was struck while using the crosswalk and N.L. was nearly struck and witnessed her sister being thrown over 75 feet and suffering serious life altering injuries."

[8] In plaintiff's opposition below, the references to trees was that "in the proximity of the intersection between the sun and the cross-walk are trees maintained by the city in a manner in violation of their own policies."

Negligence.  Negligence.  Negligence.  It cannot help plaintiff, as the City cannot be liable for negligence.  (See *Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 897; *McCarty v. Department of Transportation* (2008) 164 Cal.App.4th 955, 977 ["Once again, a public entity cannot be held liable for common law negligence"].)

Giving plaintiff's brief its most favorable reading, the last two of plaintiff's references to trees include to claimed shadowing:  "Due to the failure to maintain the tree according to ANSI standards, at various times of the year the tree casts a very dense dark shadow over the sidewalk and crosswalk," and "[a]t certain times throughout the year a driver approaching the intersection would not realize a person was in the crosswalk due to the combination of the glare of the sun and the dense dark shadow."

The trial court expressly dealt with the shadowing, holding as follows:

"With respect to the final two points, again, *Thimon* is on point, and again, it rejects the proposition that glare from the sun or shadows from trees could provide a basis for denying the MSJ.  As cited above, the 'lighting conditions' of an intersection do not constitute a dangerous condition of public property.  (*Thimon* at p. 763.)  The Court considers that glare from the sun and shadows from trees are, at bottom, 'lighting conditions.'

"Further, these lighting conditions are apparent to both pedestrians and motorists approaching and using the subject crosswalk.  For example, Ms. Padgett, the driver, testified that she knew that the trees lining the street caused 'intermittent light and shadows along Balfour as [she] drove from the previous block to the one where the accident happened.'  (Padgett Dep. 26:18-27-1; 29:3-5.)  She was familiar with the intersection, at least as a general matter.  (SSUMF Nos. 23-26.)  *Thimon* noted that when the purportedly dangerous conditions are apparent, no triable issue is raised.

18

(*Id.* at p. 761.)  There is no evidence before the Court that pedestrians are not aware of the lighting conditions at the crosswalk, and it is nearly impossible for the Court to draw a contrary inference.  (See *Mixon v. Pacific Gas & Electric* (2012) 207 Cal.App.4th 124, 134 ['it is obvious to all when a streetlight is out'].)  And there is direct, undisputed evidence before the Court concerning Padgett's awareness of the lighting conditions.  (SSUMF No. 24.)"

Plaintiff has demonstrated nothing to the contrary.

But beyond that, the City has a lengthy argument in its brief headed, "There is no duty to provide consistent levels of lighting on streets," an argument that proceeds at some length, citing to, and discussing, three cases: *Mixon v. Pacific Gas & Electric Co.*, *supra*, 207 Cal.App.4th 124; *Huerta v. City of Santa Ana* (2019) 39 Cal.App.5th 41; and *Plattner v. City of Riverside* (1999) 69 Cal.App.4th 1441.  Indeed, the City's brief discusses *Mixon* in some detail, including a lengthy quotation of the argument Mixon made there, and sums up this way:  Plaintiff's argument here is "indistinguishable from the argument rejected in *Mixon* . . . that shade created a darker area of roadway which caused the accident.  That is a claim for 'failing to provide a consistent level of lighting,' which *Mixon* rejected.  [¶]  The amount and quality of light on a roadway varies from day to day and hour to hour.  A shadow may be cast by a passing cloud, or vehicle, or dimmed by fog or pollution, or a shadow may be present at different locations from different sources depending upon the time of day or time of the year based upon any solid object in the vicinity of the roadway, such as a building, fence, sign, tree, hillside, or any of innumerable other objects.  It would be essentially impossible to uniformly light all roadways at all times. . . .  Any person using a roadway with due care is expected to take into account the apparent lighting conditions, as the *Mixon*, *Plattner* and *Huerta* decisions demonstrate."

19

Plaintiff's reply brief does not even mention, much less discuss or attempt to distinguish, *Mixon* or *Plattner*, a recognition that the City's argument has merit. (See *Rudick v. State Board of Optometry* (2019) 41 Cal.App.5th 77, 89–90 [appellants made an implicit concession by "failing to respond in their reply brief to the [respondent's] argument on th[at] point"]; accord, *Ross v. Superior Court* (2022) 77 Cal.App.5th 667, 681.)

On top of all that, we note that plaintiff cites no case supporting his position on shadowing, citing (or alluding) to a total of three cases that plaintiff mentions with no, or little, explanation: *Hilts v. County of Solano* (1968) 265 Cal.App.2d 161 (*Hilts*); *Erfurt v. State of California* (1983) 141 Cal.App.3d 837 (*Erfurt*); and *Washington v. City and County of San Francisco* (1990) 219 Cal.App.3d 1531 (*Washington*). All are distinguishable.

To begin with, all three involved appeals *by* the public entity from jury verdicts that had found there *was* a dangerous condition, and thus were decided on a standard of review not applicable here: whether there was substantial evidence of such condition. Perhaps more importantly, all three cases involved a condition or conditions not found here.

*Hilts*, the case plaintiff cited without any discussion in the conclusory paragraph quoted above, involved as pertinent here an appeal by the county after a jury found that the intersection was in a dangerous condition. Division One of this court affirmed, concluding that substantial evidence supported the verdict, including changes in roadway elevation, roadside trees that affected the driver's line of sight, an intersection of a "particular shape," and confusing warning signs. (*Hilts*, *supra*, 265 Cal.App.2d at pp. 165–167, 174.)

*Erfurt* involved a plaintiff driving on a freeway when the sun shone directly into her eyes as she reached the crest of a hill, who was thus unable

20

to stay in her lane and struck a guardrail. Plaintiff sued the state, which the jury found 60% responsible. The state appealed, and the Court of Appeal affirmed, rejecting the state's argument for "three independent reasons," the second of which was that the dangerous condition "was not merely the effect of blinding sunlight on a public highway, but the effect of blinding sunlight combined with improper" design of the highway. (*Erfurt, supra,* 141 Cal.App.3d at pp. 845–846.)

*Washington*—which concerned primarily the issue of design immunity (219 Cal.App.3d at pp. 1535–1539)—is cited by plaintiff for the proposition that "shadows can be a contributing factor in the assessment of a dangerous condition." But the case involved much more than that, most importantly "the pillars on the median [that] obstruct the view of drivers coming towards on another." (*Id.* at p. 1534.) Plaintiff Washington attempted to look between the pillars but was unable to see approaching cars, one of which he collided with. In short, the case included a line of sight barrier not present here.

Scattered throughout plaintiff's briefing are references to the ages of the children, apparently to argue that this is somehow significant, to the point that plaintiff's reply brief has a heading that reads, "Children Are Subject to a Lower Standard of Care." While the thrust of this argument is not clear, and the argument is difficult to understand, plaintiff appears to assert that minors are understood to not always use good judgment and, so the argument apparently runs, liability should somehow attach even where the victims are not using due care. Plaintiff cites no case supporting the argument.[9] And numerous cases have affirmed summary judgments in

---

[9] Plaintiff cites one case in claimed support: *Davis v. Cordova Recreational & Park District* (1972) 24 Cal.App.3d 789. But *Davis* did not

21

actions involving minors. (See, e.g., *Mathews v. Cerritos* (1992) 2 Cal.App.4th 1380, 1384–1385 and *Biscotti v. Yuba City Unified School District* (2007) 158 Cal.App.4th 554, 560–561.)

Whatever plaintiff's position, it ignores the fact that the condition of the intersection here is apparent to anyone using the intersection. The appellant in *Thimon* made a similar argument, pointing to an expert opinion that pedestrians and motorists would be unaware of the factors which contributed to the dangerous condition. (*Thimon, supra,* 44 Cal.App.5th at p. 761.) We rejected the argument, holding that all of the conditions in question, such as traffic and visibility issues, were plainly visible and that a pedestrian exercising due care would take those observable conditions into account. (*Ibid.*) The decision emphasized that liability only attaches where a danger is not apparent to those using due care. (*Ibid.*)

## DISPOSITION

The judgment is affirmed.

---

involve a determination of whether a dangerous condition existed, but whether the trial court erred in granting a directed verdict on the issue of design immunity. (*Id.* at p. 791.) *Davis* specifically limited its holding to the issue of the directed verdict on the design immunity defense: "By our holding herein, we go no further than to determine that the trial court committed reversible error in its conclusion that the defense of design immunity had been established," and remanded for determination on all of the claims and defenses. (*Id.* at p. 800.)

_____

RICHMAN, J.

We concur.


_____

STEWART,  P. J.


_____

MILLER, J.


(A164240N)